IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CARLOS CASTILLO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:07-cv-01195 CKK |
| | ) | |
| v. | ) | |
| | ) | |
| P & R ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR NOTICE TO SIMILARLY-SITUATED EMPLOYEES

Defendant, P&R Enterprises ("P&R"), by and through its undersigned attorneys, hereby

submits this memorandum of points and authorities in opposition to Plaintiff's Motion for Notice

to Similarly-Situated Employees ("Motion").

INTRODUCTION

In their Complaint, Plaintiffs Castillo and Flores purport to bring a "collective action"

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of themselves and

other similarly-situated employees. In their Motion, Plaintiffs request that the Court authorize

the sending of notices regarding this lawsuit to putative class members. However, Plaintiffs do

not limit the putative class to whom they wish notices to be sent to those who are similarly-

situated to themselves. Instead, they seek to send notices to every single person who has

performed non-exempt work for P&R in the District of Columbia since June 2004.

P&R currently has 760 non-exempt employees performing work in the District of

Columbia at 61 different buildings. (If former employees are taken into consideration, this

number is, of course, higher.) Plaintiffs have made no obvious effort to limit the putative class to

those who are similarly-situated to themselves.  Instead, taking the "lowest common denominator" approach, Plaintiffs ask this Court to authorize notice to be sent to all non-exempt employees of P&R since June 2004, regardless of whether they are part-time or have completely different job duties from Plaintiffs.

Plaintiffs pretend as if they do not have to make any kind of evidentiary showing in order to obtain personal contact information for and send notice to what could be almost 1000 employees and content themselves with relying on the allegations in their unverified Complaint. This, however, is not the case.  As set forth more fully below, Plaintiffs' motion must be denied because they have not carried their burden of demonstrating that the members of the putative class they have identified are similarly-situated to themselves from both a factual and legal perspective.

Plaintiffs apparently justify their sweeping request for notice to all of P&R's non-exempt employees by stating that they are "subject to uniform payroll policies and Defendant has a centralized payroll operation for all of its non-exempt employees."  Motion at p.7.  If such a fact were sufficient to establish that a group of employees is similarly-situated, it is hard to imagine what group of employees at a single corporate employer would not be similarly-situated.  Indeed, by this logic, Plaintiffs would be similarly-situated to their exempt supervisors or any other person employed by P&R, which, of course, is not the case.

More importantly, given the nature of P&R's business, the terms and conditions of employment for the non-exempt employees vary from building to building, given the nature of P&R's business.  Virtually every building is operated by a different property management company, whose on-site property manager approves the number of employees working in the building, the hours they work, whether they get breaks and whether they work overtime.  In

addition, the employees' time cards are reviewed by the project manager or supervisor assigned

to the building.  Even if Plaintiffs were to establish errors with respect to the calculation of hours

on their time cards, they would simply be the product of errors made by the particular project

manager or supervisor at their building.  Plaintiffs (who both worked at the same building while

employed by P&R) have made no effort to explain how they are similarly-situated, on a practical

level, to employees who work in different buildings.  Moreover, unlike Plaintiffs, the vast

majority of P&R's employees are part-time and therefore not eligible for overtime.  Plaintiffs

have provided no explanation as to how they are similarly-situated to these employees either.

As described in detail below, Plaintiffs have presented absolutely no evidence that would

allow this Court to determine that the issuance of court-approved notice to the potential class

they have identified in this case is warranted.  As one court aptly stated:

> I cannot accept the extraordinary assertion that an [aggrieved] party can file a
> complaint, claiming to represent a class whose preliminary scope is defined by
> him, and by that act alone obtain a court order which conditionally determines the
> parameters of the potential class and requires discovery concerning the members
> of that class.

*Burns v. Village of Wauconda*, No. 99-C-0800, 1999 WL 529574, *3 (N.D. Ill. 1999) (quoting

*Shushan v. University of Colorado*, 132 F.R.D. 263, 268 (D. Colo. 1990)).

For these reasons and those set forth more full below, Plaintiffs' motion should be

denied.

<u>STATEMENT OF FACTS</u>

P&R provides janitorial services at various buildings in the District of Columbia pursuant

to contracts with the property management companies that are responsible for day-to-day

operation of the buildings.  Declaration of Carlos Sanchez ("Sanchez Decl.") ¶ 1 (attached hereto

as Exhibit 1).  P&R provides janitorial services at 61 different locations in the District of

Columbia.  *Id.* at ¶ 5.  These locations are managed by a wide variety of property management

companies pursuant to separately negotiated contracts. *Id.* at ¶ 1. The building management companies generally have a property manager assigned to each building. *Id.* The property manager is responsible for the day-to-day operation of the building. He or she approves the number of P&R employees that will be working at the location, how many hours they will be working, what, if any, breaks will be taken by the employees and whether or not they will be scheduled for overtime. *Id.*

Currently, P&R has 760 non-exempt employees who perform work in the District of Columbia. *Id.* at ¶ 2. These employees work in the following positions: Day Porter/Matron, Assistant Supervisor/Project Worker, Floor Care Workers, Light Duty Cleaner, Restroom Cleaner, Vacuum Specialist, Restroom Cleaner, Trash Collector and Utility Worker. Each of these positions has different duties. *Id.*

Plaintiff Castillo was employed by P&R as a Day Cleaner. Compl. ¶ 11. Plaintiff Flores was employed by P&R as a Day Porter. Compl. ¶ 13. Both Castillo and Flores worked for P&R at a building located at 1401 H Street NW in the District of Columbia.[1] Compl. ¶¶ 11-13. Sanchez Decl. at ¶ 3. In addition to Day Porters and Day Cleaners, employees perform work at the 1401 H Street location in the following positions: Floorman, Restroom Cleaner, Vacuum Specialist, Zone Cleaner, Utility Worker, Project Manager, Supervisor, and Maid. *Id.* Each of these positions has different duties. *Id.* at ¶ 2.

P&R has a collective bargaining agreement with the Service Employees International Union, Local 82 (the "Union"). *Id.* at ¶ 4. Given the building-specific nature of P&R's operation, the Union has organized employees on a building-by-building basis. Thus, it is up to the employees at a given building whether or not they will be represented by the Union. If a

---

[1] Although both Flores and Castillo claim they worked at more than one building for P&R during the relevant time period, P&R has located no record of this.

4

majority of the employees at a given location do not desire union representation, the building is non-union; if a majority of the employees at the location desire union representation, the building is union. *Id*. P&R has 35 non-union locations and 26 union locations in the District of Columbia. *Id*. at ¶ 5. The non-exempt employees' terms and conditions of employment, including hours of work, at the union locations are dictated by the terms of the collective bargaining agreement between P&R and Local 82. The non-union buildings are not subject to the terms of the collective bargaining agreement, and the terms and conditions of employment of the non-exempt employees at the non-union locations, including hours worked, are set by P&R with the approval of the property management company at the building. *Id*. at ¶ 4. The building at which Plaintiffs Castillo and Flores worked, 1401 H Street, is non-union, and, according to P&R's records, neither Plaintiff Castillo or Flores has ever been members of the Union. *Id*.

Pursuant to the collective bargaining agreement, all employees who work a shift of six hours or more receive a 30-minute unpaid break. *Id*. at ¶ 6. Break practices at non-union buildings vary, but generally, full-time employees receive an unpaid lunch break of anywhere from 30 minutes to one hour. Part-time employees may or may not receive breaks, but if the do receive breaks, they are generally paid breaks that are 10 to 15 minutes long. *Id*. Out of the 760 non-exempt employees working for P&R in the District of Columbia, 569 of them are part-time employees. *Id*.

Each building at which P&R provides services in the District of Columbia, such as the ones at which Plaintiffs worked, has a project manager and/or supervisor employed by P&R, depending on the size of the location. *Id*. at ¶ 7. The project manager, or the supervisor, is responsible for calculating the hours worked by employees at the locations. The supervisors are responsible for reviewing the time cards submitted by the employees at the building, calculating

the hours worked by each employee and submitting the time cards and a cover sheet with the total number of hours worked by each employee to his or her Area Manager so paychecks can be issued. *Id.*

P&R's policy is to pay its non-exempt employees at the rate of one and one-half times their regular hourly rate for all hours worked over 40 in a work week and to pay their employees for all time actually worked. *Id.* at ¶ 8.

<u>ARGUMENT</u>

In support of their argument that the Court should authorize notice to all non-exempt employees of P&R, Plaintiffs rely on the Supreme Court's decision in *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 164, 169 (1989). In that case, however, the Supreme Court merely held that "district courts have discretion, *in appropriate cases*, to implement 29 U.S.C. § 216(b) . . . actions by facilitating notice to potential plaintiffs." (emphasis added). This is not such a case.

Under the express terms of section 216(b) of the FLSA, notice may not be sent to members of a putative class unless the plaintiff establishes that the class members are similarly-situated to the named plaintiffs. *See* 29 U.S.C. § 216(b) (providing that "[a]n action to recover liability prescribed in [this Title] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated"). The burden rests squarely on Plaintiffs to prove that putative class members are "similarly situated" to themselves. *See e.g., Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000); *Grayson v. K-Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996); *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562 (11th Cir. 1991); *Brooks v. Bellsouth Telecomms., Inc.*, 164 F.R.D. 561 (N.D. Ala. 1995), *aff'd*, 114 F.3d 1202 (11th Cir. Ala. 1997).

I.    PLAINTIFFS HAVE NOT PROVIDED SUFFICIENT EVIDENCE TO SUPPORT
      <u>THEIR REQUEST FOR COURT-SPONSORED NOTICE</u>

Courts have recognized that if plaintiffs are not required to produce at least some evidence of a similarly-situated class, the notice process becomes nothing more than a tool for plaintiffs to create litigation. *See e.g., England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504 (M.D. La. 2005) (holding that "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated"); *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (holding that "an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense").

Contrary to Plaintiffs' assertion in their Motion, they cannot carry their burden to show that the employees in the putative class they have identified are similarly-situated to themselves by relying on the self-serving allegations in their unverified complaint. "Allegations in a complaint are not evidence." *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 810 (7th Cir. 2003). Indeed, when establishing the existence of a putative class in an FLSA collective action, "[m]ere allegations in the complaint are not sufficient; some factually showing by affidavit or other means must be made." *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000); *Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. 2006) (same); *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006) (same). *See also* Wright, Miller and Kane, *Federal Practice & Procedure* §1807 (3d ed. 2005) ("Conclusory allegations are not sufficient . . . courts require[e] that there be some factual support and affidavits showing that the class members are 'similarly-situated.'").

Plaintiffs do not cite any cases in their Motion in which notice was issued to putative class members based solely on the allegations contained in an unverified complaint. Plaintiffs cite Judge Robertson's decision in *Chase v. AIMCO Properties* for the proposition that they can

rely "solely on the pleadings of the named plaintiffs."  Motion at p. 6.  However, this is not what the court held in *Chase*.  Rather, the court stated, in deciding whether to authorize court-sponsored notice, is that "the determination is ordinarily based mostly on the parties' pleadings and affidavits."  374 F. Supp.2d 196, 200 (D.D.C. 2005) (emphasis added).  Indeed, in *Chase*, the parties had "issued several rounds of written discovery, including requests for admissions, requests for production and interrogatories, and AIMCO has produced more than 2,500 survey forms from the DOL audit" at the time the court made the decision on whether court-sponsored notice should issue.  *Id*. at 199.

Thus, Plaintiffs' reliance on the mere allegations in their unverified complaint is plainly insufficient, and as such, they have not submitted a sufficient modicum of evidence to support their request for notice to be sent to the putative class they have identified.

II.     PLAINTIFF'S MOTION FOR NOTICE SHOULD BE DENIED BECAUSE THE PUTATIVE CLASS MEMBERS ARE NOT SIMILARLY-SITUATED

Plaintiffs' Motion is also deficient because employees in the putative class identified by Plaintiffs are not similarly-situated to them with respect to the terms and conditions of their employment or the claims they will assert.  As a result, their Motion should be denied.

Although the D.C. Circuit has not yet considered by what standard a district court should determine whether putative class members in an FLSA collective action are similarly-situated, the Third Circuit has developed an approach that has been used in this district.  The Third Circuit standard involves analyzing whether the putative class members (1) "all worked in the same corporate department, division and location; (2) "all advanced similar claims" and (3) "sought substantially the same form of relief."  *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 51 (3rd Cir. 1989).  At least three federal courts in the District of Columbia have employed standard set forth in the Third Circuit's decision in *Lockhart* in making determinations about whether or

not employees are sufficiently similarly-situated to support court-sponsored notice to potential

class members; *Chase*, 374 F. Supp. 2d 196, 200 (D.D.C. 2005 (examining the "district legal and

factual similarities and differences between and among class members legal claims"); *Hunter v.

Sprint Corp.*, 346 F. Supp. 2d 113, 119 (D.D.C. 2004) ("a substantial identity both of factual

circumstances and legal claims is required before a collective action may proceed"). *See also

Hyman v. First Union Corp.*, 982 F. Supp. 1, 6 (D.D.C. 1997)

     In this case, Plaintiffs have not identified a putative class that is not similarly-situated to

them, either factually or legally.

    A.    Putative Class Members Have Different Job Duties Than Plaintiffs, Are Part-
           Time and Do Not Work in the Same Location as Plaintiff

     The putative class to whom Plaintiffs are asking this Court to send notice of this lawsuit

consists of all non-exempt employees who performed work for P&R in the District of Columbia

since June 2004. Plaintiffs' attempt to lump all non-exempt P&R employees into one generic,

homogenous group cannot succeed. There are significant differences among these employees

with respect to the terms and conditions of their employment.

     Currently, P&R has 760 non-exempt employees who perform work in the District of

Columbia. Sanchez Decl. ¶ 2. Although Plaintiffs have worked only in the positions of Day

Cleaner and Day Porter, the putative class members work in a wide variety positions that have

different duties: Day Porter/Matron, Assistant Supervisor/Project Worker, Floor Care Workers,

Light Duty Cleaner, Restroom Cleaner, Vacuum Specialist, Restroom Cleaner, Trash Collector

and Utility Worker. *Id.* Plaintiffs have not attempted to explain how they are similarly-situated

to employees with completely different jobs. The court in *Freeman v. Wal-Mart Stores, Inc.*

refused to permit notice to putative class members where, as here, the plaintiffs failed to show

that employees with different job titles were in fact similarly-situated:

> Plaintiffs' view seems to be that all salaried Wal-Mart employees below officer
> level are similarly situated no matter what their job duties are: the employees are
> similarly situated simply because they claim violations of the law by the same
> employer.  Adopting plaintiff's view would require us to conclude that if an
> employer has two or more non-officer, salaried employees who allegedly are not
> being paid overtime by the Act, then a collective action would be appropriate
> under 216(b).

256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

Moreover, Plaintiffs worked at the 1401 H Street location.  Compl. ¶¶ 11, 13.  The

putative class members work at one or more of 61 different locations throughout the District of

Columbia where P&R provides janitorial services.  Virtually everyone of these buildings is

operated by a different property management company pursuant to contract.  The property

management company assigns a property manager to each building who decides how many P&R

employees will work in the building, what breaks they will receive, if any, and whether or not

they will be scheduled for overtime.  Sanchez Decl. ¶ 1.  Moreover, each building has a project

manager and/or supervisor assigned to it by P&R.  It is the project manager or supervisor who

schedules employee breaks and reviews the time cards of each employee at the building and

determines how many hours of work for which they will be compensated.  *Id*. at ¶ 7.  Thus, the

scheduling of employees' hours and breaks, as well as the computation of their hours worked,

occurs on a building-by-building basis, and employees from 61 different buildings are not

similarly-situated.

Indeed, in acknowledgment of the building-specific issues affecting the employees' terms

and conditions of employment, union representation of P&R's janitorial employees is determined

on a building-by-building basis.  If a majority of employees in a building express a desire for

union representation, the building is union; if the employees in a building do not desire Union

representation, the building is non-union.  *Id.*at ¶ 4.  26 of which are union buildings and 35 of

which are non-union buildings.  The building at which Plaintiffs worked, 1401 H Street, is non-

union, and it does not appear that Plaintiffs have ever been union members. *Id.* A substantial portion of the putative class are union employees (267 of P&R's 760 current non-exempt employees are union employees), and unlike Plaintiffs, their terms and conditions are dictated by the collective bargaining agreement between P&R and the Union. *Id.* This is another significant difference that distinguishes Plaintiffs from members of the putative class.

Most importantly, unlike Plaintiffs, who were full-time employees, 569 of the 760 non-exempt employees currently working for P&R in the District of Columbia are part-time. *Id.* at ¶ 5. As part-time employees, the vast majority of the putative class members were not scheduled for overtime or in a position to work more than 40 hours per week. Moreover, Plaintiffs as full-time employees received unpaid lunch breaks, but the part-time employees at P&R either receive no breaks or only short paid breaks. *Id.* at ¶ 6.

In sum, Plaintiffs are not similarly-situated with respect to their terms and conditions of employment to the putative class members to whom they request to have notice of this lawsuit sent. On this basis alone, Plaintiffs' Motion should be denied.

B.    The Putative Class Members Will Not Advance Similar Legal Claims

Plaintiffs' lawsuit is essentially about the alleged failure by P&R to pay overtime to its non-exempt employees for all hours worked in excess of 40 in a work week. Indeed, this is the only claim that is mentioned in Plaintiffs' proposed notice to the putative class.[2] The problem is, however, that the vast majority of employees in the putative class identified by Plaintiffs are part-time and cannot assert any claims for unpaid overtime.

---

[2] In the section of Plaintiffs' proposed notice entitled "What is the lawsuit about?", it states that "Defendant failed to pay them overtime . . . for hours they worked over 40 in a workweek." In the section entitled "Why did I get this notice?", Plaintiffs' proposed notice states that "you are potentially a class member in this case, either for the federal FLSA overtime claims or for the DC-MWA overtime claims."

Out of the 760 non-exempt employees currently performing work for P&R in DC, 569 are part-time. Sanchez Decl. ¶ 5. Thus, the bulk of the employees in the putative class identified by Plaintiffs are not scheduled to work 40 hours per week and do not work any overtime.[3] There would be no point in providing such individuals with notice of this lawsuit. It would be a waste of resources to send notices to employees who are not overtime eligible because they cannot join in Plaintiffs' claims for unpaid overtime. P&R should not be put to the time and expense of deposing such individuals, issuing discovery requests to them, reviewing their time records and ultimately preparing a motion to exclude them from this lawsuit as part-time employees when it is clear right now that they should not be a part of it.

Moreover, to the extent Plaintiffs' claim they were required to work through their unpaid lunch breaks, which they received as full-time employees, the part-time employees would not be able to assert this claim either. Part-time employees at P&R either receive no breaks or short paid breaks; they do not receive unpaid breaks. Sanchez Decl. ¶ 6. If an employee is not does not take breaks, or if the employee's breaks are paid breaks, he or she would not be able to assert a legal claim based on working through an unpaid break.

In sum, the putative class members cannot all assert the same legal claims as Plaintiffs, and this is another basis on which Plaintiffs' motion should be denied.[4]

---

[3] To the extent Plaintiffs intend to dispute this unremarkable proposition, this Court should, at a minimum, require Plaintiffs to provide the court with some evidence that any of the part-time employees in the putative class they have identified could assert overtime claims.

[4] After looking at factual and legal similarities, the last prong of the Third Circuit standard looks at whether the type of relief requested by the putative class members is the same as that being requested by the named plaintiffs. Plaintiffs have not shown that any putative class members has any interest in participating in this litigation and what relief they might request if they did. This provides yet another basis on which to deny Plaintiffs' motion because they are required to show that members of the putative class are actually interested in participating in the lawsuit. *See, e.g., Rodgers v. CVS Pharmacy Inc.*, No. 8:05-CV-770-T-27MSS, 2006 WL 752831 at *8 (M.D. Fla. March 23, 2006) ("Plaintiffs' unsupported beliefs and expectations that other *may* desire to opt in

C.    Plaintiffs Have Failed To Establish The Existence Of A Common Policy, Practice Or Scheme To Violate The FLSA

To obtain court-authorized notice, a plaintiff must also provide evidence of a policy or practice that allegedly violates the FLSA and that is applicable to all individuals in the proposed class. *See Burns v. Village of Wauconda*, No. 99-C-0800, 1999 WL 529574, *3 (N.D. Ill. 1999); *Ray v. Motel 6*, 4 Wage & Hour Cas.2d 573, 575-76 (D. Minn. 1996); *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995); *Severton v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991).

Plaintiff alleges that P&R has a companywide policy of not paying overtime.  Compl. ¶ 18.  This is simply not true.  P&R's policy is to pay its non-exempt employees at the rate of one and one-half times their regular hourly rate for all hours worked over 40 in a work week and to pay its employees for all time actually worked.  Sanchez Decl. ¶ 8.  Plaintiffs' bald allegation to the contrary cannot support their request for notice to putative class members.

An unsubstantiated, imprecise allegation of a companywide practice will not satisfy Plaintiff's burden of establishing the propriety of collective treatment.  *Freeman*, 256 F. Supp. 2d at 945 (mere allegation of widespread FLSA violation is insufficient to justify collective action treatment).  *See also Hal v. Burk*, 2002 U.S. Dist. LEXIS 4163 at *8 (denying same notice'");

---

are insufficient to justify certification of a collective action and a notice to a potential class.") (emphasis in original) (attached as Exhibit J); *Pfohl v. Farmers Ins. Group*, NO. CV 03-3080 DT,  2004 U.S. Dist. LEXIS 6447, *31 (C.D. Cal. March 1, 2004) (denying conditional certification of class in part because plaintiffs failed to show that any members of the putative class were likely to assert similar claims); *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1236 (M.D. Ala. 2003) (holding that before conditionally certifying an FLSA collective action, "the court must at least satisfy itself that there are other persons who are similarly situated *and who desire to opt-into this case*.") (emphasis added) (citing *Dybach*, 942 F.2d at1567-68); *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp.2d 1272, 1276-77 (M. D. Ala. 2004) (holding that plaintiffs failed to meet burden where they did not submit affidavits from putative class members, consents to join, or expert evidence).

*Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435-36 (company-wide notice of collective action not justified by declaration stating: "From my experience . . . working closely with collection representatives throughout the country and through socializing with them, it is apparent to me that Household controls the various positions throughout the company, including collection representatives, through the same general policies, practices and procedures").

In a factually similar case, *Ray v. Motel 6*, 4 Wage & Hour Cas.2d 573, 575 (D. Minn. 1996), plaintiffs brought suit on behalf of themselves and a putative class made up of assistant managers from 775 different motels. In denying the plaintiffs' request to send notice to putative class members, the court relied on the fact that each motel was run by "an on-site manager and assistant manager . . . . responsible for the daily operations of the motel" and that "the official written policy dictates that FLSA will be paid in compliance with the FLSA." The court determined that any violations of law occurred on a "decentralized level" and "overtime is controlled by area supervisors." As explained by the court in that case, to obtain court-authorized notice, "it is not enough that putative plaintiffs share the same employer and allege a common scheme." *Id.*

In another case, *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D. Ala. 1999), the court also denied notice to a putative class consisting of all hourly employees working for the defendant in its restaurants throughout the Southeast and holding a variety of positions, such as cooks, dishwashers, cashier, bakers and hostesses. *Id.* at 362. The named plaintiffs, however, all worked in the same restaurant. *Id.* at 363. The court refused to authorize notice to the putative class "[o]n the basis of evidence supporting possible FLSA violations at one restaurant and unsupported allegations of widespread wrongdoing at Defendant's other restaurants." *Id.*

14

Also, in *Tucker v. labor Leasing, Inc.*, 872 F. Supp. 941 (M.D.Fla. 1994), the court refused to send notice to a putative class made up of employees in certain positions employed at all of defendant's terminals. Instead, the court only allowed notice to issue to those employees working in the same terminal as the named plaintiffs. *Id.* at 949. In doing so, the court noted that the "wage rate and shift decisions are determined on a terminal-by-terminal basis. *Id.* at 948.

In this case, the number of hours for which non-exempt employees will be compensated are calculated by the project manager or supervisor at the building in which the employees work. Thus, even if Plaintiffs could ultimately establish that they were not paid for all hours worked, this is a building-specific issue. Thus, their motion does not establish a common scheme or policy and should be denied. *See also Wertheim v. State of Arizona*, No. Civ. 92-0453, 1992 WL 566321 at *3 (D. Ariz. 1992) (notice as to entire class denied where plaintiff presented no credible evidence in support of his allegation that he was deprived of overtime and on-call compensation as the result of a centralized decision-making process that affected all employees of the State of Arizona); *Burns*, 1999 WL 529574 at *3 (motion for notice denied where plaintiff merely relied upon the unverified assertion in his complaint that the employer applied the overtime policy at issue on a general employee-wide basis and employer submitted an affidavit indicating that the overtime policy was not applicable to the entire class); *Severtson*, 137 F.R.D. at 266-67 (D. Minn. 1991) (in ADEA action, motion for notice denied where plaintiff failed to provide any factual basis for his claim of a class-wide pattern or practice of discrimination and employer submitted evidence tending to show that no widespread practice of discrimination existed).

For all of the foregoing reasons, Plaintiffs have failed to establish that the employees in the putative class to which they wish to send notice of this lawsuit are similarly-situated to themselves from either a factual or legal standpoint.

III.    PLAINTIFFS' PROPOSED NOTICE IS INAPPROPRIATE

Setting aside the fact that Plaintiffs have not established a putative class of similarly-situated employees, the notice Plaintiffs propose to send to putative class members is improper in several respects.  First, the means by which Plaintiffs propose to send notices to members of the putative class is inappropriate because it unnecessarily impinges on the privacy interests of P&R's current and former employees.  Second, the content of Plaintiffs' proposed notice is incomplete and misleading.  Third, the notice needs to provide a short and defined time period in which putative class members may file a consent to join this action if they want to participate in it.  Finally, the group to whom Plaintiffs propose to send notice is overbroad.

A.    Plaintiffs' Proposed Means Of Providing Notice To Putative Class Members Is Improper

In their Motion, Plaintiffs seek an order requiring P&R to provide them with the names and contact information of its current and former non-exempt employee, which is well over 760 people.  Such an order is unwarranted.  Putative class members' names and address information should not be provided to Plaintiffs' counsel in the absence of a legitimate need for the information.  P&R should not be required to provide such information to a third party when there are less intrusive means available to notify members of the putative class of the pendency of this action.  In the event that this Court were to authorize notice to be sent in this case, the Court could simply direct P&R to send whatever notice is approved by the Court directly to the last known residential address of each putative class member.

Further, in the event this Court were to require P&R to provide Plaintiffs' counsel with contact information for its current and former employees, it should also order Plaintiffs' counsel must limit their communication between Plaintiffs or their counsel and members of the class to the notice itself, unless and until the employee files a consent to join the suit and selects Plaintiffs' counsel to represent him or her. The Court has a duty to protect members of the putative class from receiving unwelcome or inappropriate communications from Plaintiffs' counsel. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (noting potential for abuse in unsupervised communications between counsel for named plaintiffs in FLSA collective action and putative class members). *See also Hipp v. Liberty Nat'l Life Ins. Co.*, 164 F.R.D. 574, 576 (M.D. Fla. 1996), *aff'd*, 252 F.3d 1208 (11th Cir. 2001) (limiting communications between plaintiffs or their counsel and putative class members); *Tucker*, 872 F. Supp. at 949-50 (ordering that no communications between plaintiffs' counsel and putative class members be made without leave of court).[5]

> B.    The Substance Of Plaintiffs' Proposed Notice Is Incomplete and Misleading

The substance of Plaintiffs' proposed notice is improper in several respects. The Court should require substantial revisions to the form before it is used to provide notice of the pendency of this lawsuit to the members of any putative class.

First, the proposed notice does not accurately inform putative class members of the consequences of opting in to the case as a party plaintiff. It states that "you might have to answer questions about your overtime claim and you may have to testify at a deposition or in

---

[5] In this same vein, the section in Plaintiffs' proposed notice instructing recipients of the notice to provide notifications of address change to Plaintiffs' counsel, whether or not they decide to join the suit, should be stricken, as well as the section directing recipients of the notice to contact Plaintiffs' counsel with questions regarding "the settlement" and if they believe they have been subject to "retaliation." Plaintiffs' Notice at pp. 3-4.

court" Plaintiffs' Notice at p. 1. This statement does not accurately inform prospective class members of the obligations of being an opt-in plaintiff. Any notice the Court approves should include a statement that, as plaintiffs, individuals who file consents to opt in will be subject to discovery obligations, which may include providing deposition or trial testimony under oath, responding to document requests, providing interrogatory answers under oath and/or responding to other requests for information. *See, e.g., Rosen v. Reckitt & Colman, Inc.,* No. 91 Civ. 1675 1994 U.S. Dist. LEXIS 16511 (S.D.N.Y. Nov. 17, 1994) (authorizing defendant to take depositions of all opt-in plaintiffs in addition to propounding written discovery); *Kass v. Pratt & Whitney*, NO. 89-8343, 1991 WL 158943, *5 (S.D. Fla. March 18, 1991) (authorizing defendant to propound interrogatories, document requests, and deposition notices on opt-in plaintiffs). Prospective opt-in plaintiffs should also be informed that they could be liable for P&R's costs of defending the case if the Company ultimately prevails in the matter. *See* Fed.R.Civ.P. 54(d). An accurate account of the implications of joining the case as a plaintiff is essential to allow each potential opt-in plaintiff to make an informed decision about whether to participate.

Plaintiffs' proposed notice is also misleading because it presents a one-sided view of the case. Any notice the Court issues should include a summary not only of Plaintiffs' claims against P&R, but also of P&R's defenses ton those claims. *See e.g., Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 253 (M.D.Tenn. 1996) (authorizing notice that included statement of employer's affirmative defenses); *Garza v. Chicago Transit Auth.*, No. 00-C-0438k, 2001 WL 503036 (N.D. Ill. May 08, 2001) (authorizing notice including statement that, if the court rules in favor of defendant, opt-ins will be entitled to nothing). If the Court authorizes notice to any potential class members, the content of the notice form should be balanced with a statement of P&R's defenses in this matter. Plaintiffs' proposed notice merely states that "Defendant will

18

argue to the Court that it complied in full with all applicable laws and deny any wrongdoing and/or liability to Plaintiffs or any other past or present employee." Plaintiffs' Notice at p. 2. P&R's Answer contains eight enumerated affirmative defenses and this does not even include defenses P&R may have that do not constitute affirmative defenses.

Finally, the Court should not authorize a notice that requires opt-in plaintiffs to select the D.C. Employment Justice Center or Davis, Cowell & Bowe as their counsel. Plaintiffs' proposed notice states that "[i]f you choose to join this lawsuit, your interests will be represented by the Plaintiffs through their attorneys as counsel for the class." Plaintiffs' Notice at p. 4. Opt-in plaintiffs are not required to accept representation by Plaintiffs' counsel in order to participate in this case. *See, e.g., Schwed v. Gen. Elec.*, 159 F.R.D. 373, 380 (N.D.N.Y. 1995) (holding that each opt-in plaintiff is entitled to be represented by plaintiffs' attorneys or by an attorney of his or her own choosing); *King v. ITT Continental Baking Co.*, NO. 84 C 3410, 1986 WL 2628, *6 (N.D. Ill. Feb 18, 1986) (same); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 445 (N.D. Ill. 1982) (same). Any notice the Court approves should therefore clearly indicate that each opt-in plaintiff is entitled to representation by counsel of his or her choice and is not required to enter into any arrangement with Plaintiffs' counsel.

      C.    Putative Class Members Should Be Required To Return Their Opt-In Notices Within A Short and Defined Period Of Time

If the Court grants Plaintiffs' motion to send notice to putative class members in this case, the notice should set forth a short and defined time period in which recipients of the notice may file consents to join the suit. A short window during which potential class members may opt into the case will allow the parties to conduct discovery and prepare the case for trial in a timely and efficient matter. Courts often afford members of a conditionally certified class 30 days or less from the date class is certified to file consents to join the litigation. *See, e.g.*, *King*,

1986 WL 2628 at *6 (authorizing class members to file consents to join within thirty days from the date notice was mailed); *Held v. Nat'l R.R. Passenger Corp.*, 101 F.R.D. 420, 425 (D. D.C. 1984) (certifying class and authorizing class members to file consents to join "no later than thirty days from the entry of this order"); *Watkins v. Milliken & Co.*, 613 F. Supp. 408, 420 (W.D. N.C. 1984) (denying notice and ordering that all consent forms be filed within 30 days of order); *Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (authorizing notice to members of conditionally certified class and providing 21-day timeframe in which they may file consents to join). The Court should therefore set a short and definite period of time in which members of the putative class may consents to join the lawsuit.

> D.    Any Notices Sent Should Only Be Sent to Employees Who Worked for P&R
>        Within Three Years of the Date on Which Notice Is Sent

Plaintiffs request that this Court send notice to all non-exempt employees who worked for P&R in the District of Columbia since June 2004. However, as Plaintiffs are well aware, the statute of limitations is not tolled for an individual's claims until he or she files a consent to join the action with the Court. Therefore, it would be pointless to send notice of the pendency of this action to former P&R employees whose employment with the Company terminated more than three years before the date on which notice is sent because those individuals are time barred from asserting claims against P&R in this lawsuit. Thus, any notice should not be sent to putative class members who have worked for P&R since June 2004, but rather, for the three-year period preceding the date on which any notice is sent. [6]

---

[6] When P&R requested additional time to respond to Plaintiffs' motion to send notice to potential class members, it agreed that any consent forms submitted by individuals who wish to opt-in in the event notice is issued be "back dated" four weeks for statute of limitations purposes in order to ameliorate any prejudice to Plaintiffs as a result of the delay in responding to the Notice Motion caused by the extension requested in this motion. Nothing in this opposition is intended to affect that agreement.

<u>CONCLUSION</u>

For the foregoing reasons, P&R respectfully requests that Plaintiffs' motion be denied.

Respectfully submitted,


By  <u>/s/ Karla Grossenbacher</u>
      Karla Grossenbacher  (Bar #442544)
      Jessica Taverna (Bar # 973870)
      SEYFARTH SHAW LLP
      815 Connecticut Avenue, N.W.
      Suite 500
      Washington, D.C. 20006-4004
      (202) 463-2400

      Attorneys for Defendant


Dated:     September 7, 2007

DC1 30206983.1

# EXHIBIT 1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR NOTICE TO SIMILARLY-SITUATED
EMPLOYEES

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CARLOS CASTILLO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:07-cv-01195 CKK |
| | ) | |
| v. | ) | |
| | ) | |
| P & R ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF CARLOS SANCHEZ

I, Carlos Sanchez, declare that I am familiar with the matters asserted herein and make this declaration upon personal knowledge. I further declare, under the penalty of perjury, that the statements contained in this declaration are true and correct to the best of my knowledge and belief:

1.    I am the President of P&R Enterprises, Inc. ("P&R"). P&R provides janitorial services at various buildings in the District of Columbia pursuant to contracts with the property management companies that are responsible for day-to-day operation of the buildings. These property management companies generally have on-site property managers assigned to each of the buildings. He or she approves the number of P&R employees that will be working at the location, how many hours they will be working, what, if any, breaks will be taken by the employees and whether or not they will be scheduled for overtime.

2.    Currently, P&R has 760 non-exempt employees who perform work in the District of Columbia. These employees work in the following positions: Day Porter/Matron, Assistant Supervisor/Project Worker, Floor Care Workers, Light Duty Cleaner, Restroom Cleaner, Vacuum Specialist, Restroom Cleaner, Trash Collector and Utility Worker. Each of these

1

positions has different duties.   A true and correct copy of job descriptions for these positions is attached hereto as Attachment A.

3.      Plaintiff Castillo was formerly employed by P&R as a Day Cleaner.  Plaintiff Flores was formerly employed by P&R as a Day Porter.  Both Castillo and Flores worked for P&R at a building located at 1401 H Street N.W. in the District of Columbia.   The employees who perform work at 1401 H Street are employed in the following positions:  Day Cleaner, Day Porter, Floorman, Restroom Cleaner, Vacuum Specialist, Zone Cleaner, Utility/Project, Project Manager, Supervisor, and Maid.

4.      P&R has a collective bargaining agreement with the Service Employees International Union, Local 82 (the "Union").  The Union organizes employees on a building-by-building basis.  Thus, it is up to the employees at a given building whether or not they will be represented by the Union.  In those buildings in which the Union represents the employees, the non-exempt employees' terms and conditions of employment are dictated by the collective bargaining agreement between P&R and the Union.  The terms and conditions of employment of the non-exempt employees at the non-union locations, including hours worked, are set by P&R, subject to approval by the property management companies that operate the locations.  The building at which Plaintiffs Castillo and Flores worked, 1401 H Street NW, is non-union.  According to P&R's records, neither Plaintiff Castillo or Flores has ever been a member of Local 82.  267 of P&R's 760 current non-exempt employees are union employees

5.      P&R currently provides janitorial services at 61 different locations in the District of Columbia.  P&R currently has 35 non-union locations and 26 union locations in the District of Columbia.

2

6.      Pursuant to the collective bargaining agreement between P&R and the Union, all non-exempt employees at union locations who work a shift of six hours or more receive a 30-minute unpaid break.  Break practices at non-union buildings vary, but generally, full-time employees receive an unpaid lunch break of anywhere from 30 minutes to one hour.  Part-time employees may or may not receive breaks, but if the do receive breaks, they generally receive paid breaks that are 10 to 15 minutes long.  Out of the 760 non-exempt employees working for P&R in the District of Columbia, 569 of them are part-time employees.

7.      At each building at which P&R provides services in the District of Columbia, a project manager (and/or supervisor, depending on the size of the location) oversees the P&R employees who work in the building.  The project manager, or the supervisor if there is no project manager at the building, is responsible for scheduling employee breaks, if any, reviewing the time cards submitted by the employees at the building and calculating how many hours were worked by each employee and submitting the time cards, along with a cover sheet noting the total number of hours worked by each employee,  to his or her Area Manager so paychecks can be issued.

8.      P&R's policy is to pay its non-exempt employees at the rate of one and one-half times their regular hourly rate for all hours worked over 40 in a work week and to pay their employees for all time actually worked.   A true and correct copy of the portion of P&R's Employee Handbook dealing with overtime is attached hereto as Attachment B.

Further declarant sayeth not.

CARLOS SANCHEZ

# ATTACHMENT A

**TO DECLARATION OF CARLOS SANCHEZ**



## ADDITIONAL JOB DESCRIPTIONS
### DAY PORTER/MATRON
The Day Porter reports to the Area Manager.  This position is the key to the daytime functions and will be staffed by a knowledgeable and experienced employee who can manage not only the day cleaning requirements, but also the emergency activities that may arise.  This person could act in place of the Area Manager to shift resources to fulfill any special contract requirements that may occur.

Polices all areas outside of the facility (e.g., sweep sidewalks, collect trash).

Cleans entrance doors and frames.

Cleans lobby glass.

Cleans loading dock and garage ramps.

Polices and maintain elevator cabs, including floors.  If the floors are carpeted, vacuum and remove spots, as required.

Polices Women's and Men's restrooms according to the Scope of Work or at a minimum of twice a day (morning and afternoon).  Check and fill paper towels, toilet tissue, seat covers, and soap dispensers.

Cleans stairwells.

Cleans and maintains engineering and janitorial office areas and storage rooms.

Cleans spills, leaks, and other areas requiring immediate attention.

Sets out walkoff mats when during hazardous conditions (e.g., rain or snow).  Maintain the mats in a clean condition.

Removes snow in accordance with the P&R's Snow Removal Plan and the assignment given.

Other duties as assigned by the Area Manager and/or client.


### ASSISTANT SUPERVISORS/PROJECT WORKERS
The Assistant Supervisor will report to the Area Manager.  This person will be working will carry out cleaning tasks and special project work in addition to their supervisory responsibilities.  In addition, the Assistant Supervisor will assist the Supervisor with the management and training of the cleaning staff, as well as any other assigned management duties.


### FLOOR CARE WORKERS
Floor care workers are responsible for heavy or periodic cleaning of all hard surface and carpeted areas.

Places Wet Floor/Hazard Signs where required.

Damp or wet mops hard surface floors using appropriate solutions.

Polishes all finished floors using low or high-speed floor machines, nylon pads, and spray buff or maintainer.

Reseals and refinishes floors using the appropriate products.

Cleans sidewalks, concrete, hallways, and similar surfaces using pressure washers, steam equipment, or equivalent.

Periodically scrubs restroom floors using low speed floor machines, nylon pads, and appropriate products.

Removes excess water from floors after floods and leaks using we/dry industrial vacuuming.

Performs surface cleaning on carpeted areas.

Performs deep hot water extraction on carpeted areas.

Additional duties as assigned by Supervisor.

Refers all significant concerns, complaints, potential disputes, or problems to supervision for resolution.

**LIGHT DUTY CLEANERS**
The light duty cleaner is trained for room cleaning tasks and working as a team with the vacuum specialist.

Reports to work on time and first meets with immediate supervisor to receive any special instructions and/or precautions related to the area(s)/tasks assigned and/or tenants served.

Picks up appropriate service cart from the staging area, checking it to ensure it contains all the equipment and supplies required.  If necessary, obtains door keys for assignments.

Uses the appropriate cleaning solution and equipment for each task, dusts, damp wipes, and/or spot cleans all horizontal and vertical surfaces including, but not limited to, desks, chairs, filing cabinets, window sills/ledges, bookshelves, telephones, walls up to 60", light switches/plates, and glass tables/desktops, partitions, doors, carpet base, and mirrors.  Exceptions to these tasks are defined in special cleaning instructions.

Empties all trashcans and other waste receptacles into the refuse collection bags in accordance with the recycling separation program.  Damp wipes trashcans and other waste receptacles. When required, replaces plastic receptacle liners.

Polices floor for items of value and objects too large or heavy to be picked up by vacuum. Places any valuable or useful items found on the floor on the nearest table or desktop.

Observes and informs the Supervisor of any mechanical and/or electrical malfunctions (e.g., locks, doorknobs, light bulbs, and fixtures).  Makes note of any item(s), broken or otherwise, damaged prior to or during their presence in the area.



Observes and makes note of any floor, wall, carpet, and baseboard conditions required special cleaning effort.

Periodic tasks include dusting/damp wiping cabinet tops, venetian blinds, pictures, and other wall décor on days and frequencies assigned by the Supervisor.  Other periodic duties may be assigned by the Supervisor.

Upon completing all assigned cleaning tasks, takes cleaning cart back to the staging area, turns in keys, and inform Supervisor of any observations needing action.

Refers all significant concerns, complaints, potential disputes, or problems to supervision for resolution.

### VACUUM SPECIALISTS
The Vacuum Specialist uses a backpack vacuum for the entire work shift, greatly increasing the quality of the cleaning and productivity, working in tandem with the light duty cleaner.

Reports to work on time and first meets with immediate supervisor to receive any special instructions and/or precautions related to the area(s)/tasks assigned and/or tenants served.

Picks of equipment and any keys needs to perform tasks from the staging area.

Vacuums all public corridors, restrooms, stairwell landings, and other open areas, while the Light Duty Cleaner is performing their duties in the tenant offices,

Follows the same route as the Light Duty Cleaner, vacuuming each office.

Upon entering the office, vacuums under the trashcan first, serving as a check that it has been emptied.  Pulls the trash, if necessary and places in corridor for pickup.  Completes the rest of carpet duties according to the cleaning specifications in the office and on the floor.

Periodically, performs high dusting above 72" using the wand of the backpack vacuum and round brush head for the ceiling air vents, light fixtures, picture frames, door sills, and all other objects in each office and corridor.

Performs routine duties as assigned by immediate Supervisor.

Returns equipment and keys to staging area.  Informs Supervisor of any items needing follow-up.

Refers all significant concerns, complaints, potential disputes, or problems to supervision for resolution.

### RESTROOM CLEANERS
These individuals are responsible for thoroughly cleaning, disinfecting, and stocking restrooms.



Reports to work on time and first meets with immediate supervisor to receive any special instructions and/or precautions related to the area(s)/tasks assigned and/or tenants served.

Checks and restocks all dispensers.

Empties and cleans all trash receptacles,

Cleans hand bowls and hardware.

Clean mirrors; clean toilet bowls and urinals.

Spot cleans doors, partitions, walls, etc.

Dusts walls, door casings, light fixtures, partitions, etc..

Sweeps and mops floors.

Removes all trash, properly bagged, to appropriate elevator lobby for removal.

Ensures that no build up will accumulate under rims of bowls, urinals, around plumbing fixtures, or in corners, walls, and partitions.

Maintains showers located throughout the building.

Periodically scrubs floors, as directed by Supervisor.

Periodically dusts all overhead light fixtures and ceilings, as directed by Supervisor.

Performs other duties as assigned by Supervisor.


**TRASH COLLECTORS**
Trash Collectors remove trash and recycling materials from with tenant and public areas.

Collects trash and recycling materials from the service elevator areas on each floor and removes them to the appropriate containers on the loading dock.

Nightly cleans the service elevator after completing all trash and recycling removal. Uses wet mop to clean floor. Damp wipes each wall with multi-surface cleaner.

Monitors the capacity of each container, requesting additional pickups when necessary.

Follows all building and company guidelines for security and conduct.

Reports hazards, suspicious activity, and maintenance problems to supervision or security.

Refers all significant concerns, complaints, potential disputes, or problems to supervision for resolution.



**UTILITY WORKER**
Utility Workers perform a variety of tasks including cleaning stairwells; cleaning elevators and tracks; high-dusting in atriums, etc. They perform scheduled periodic work (e.g., those tasks performed less frequently than every 10 days). These workers and their assigned tasks are flexible in nature in that a slight delay in scheduled tasks does not disrupt tenant operations or detract from facility appearance. They remain available for requests, complaints, and/or emergencies.

# ATTACHMENT B

**TO DECLARATION OF CARLOS SANCHEZ**

JANUARY 2001

# E M P L O Y E E
# H A N D B O O K

5681 Columbia Pike, Suite 101
Falls Church, Virginia 22041
tel 703.931.1000
fax 703.931.7271
www.p-and-r.com





# IV

**PAY ADVANCES**
No salary advances will be granted for any reason.

**OVERTIME PAY**
Non-exempt employees will be paid time and one-half for authorized hours worked
in excess of forty hours in one week. All overtime work by non-exempt employees
must be authorized in advance by your Supervisor.



JANUARY 2001