IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARLOS CASTILLO, <u>et</u> <u>al</u>.,　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)　　Civil Action No. 1:07-cv-01195 CKK
　　　　v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
P & R ENTERPRISES, INC.,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　　　　)

<u>JOINT MOTION OF THE PARTIES TO APPROVE SETTLEMENT</u>

Plaintiffs and Defendant P&R Enterprises, Inc. ("Defendant" or "P&R") hereby move this

Court for approval of the proposed settlement of the above-captioned lawsuit (the "Lawsuit").

Plaintiffs and Defendant (collectively, the "Parties") state as follows in support of their motion:

　　　　1.　　　In June 2007, Plaintiffs Carlos Castillo and Carlos Flores filed a complaint, alleging

violations of the Fair Labor Standards Act ("FLSA"), the District of Columbia Minimum Wage Act

Revision Act ("DCMWA") and the District of Columbia Wage Payment and Wage Collection Act (the

"DC Wage Payment Law").  Specifically, they claimed that they were not paid for all hours worked,

including overtime, in conformance with applicable law.  The FLSA and DCMWA claims were filed

as a collective action (the "FLSA Collective Action").  The DC Wage Payment Law claim was filed as

a class action under F.R.C.P. 23 (the "District Action").

　　　　2.　　　P&R denies Plaintiffs' allegations in the Lawsuit.

　　　　3.　　　On October 19, 2007, this Court conditionally certified a class for purposes of the FLSA

Collective Action and notice was issued to potential class members on or about November 30, 2007,

informing them of their right to "opt-in" to the FLSA Collective Action.

4.      There are 20 plaintiffs in the FLSA Collective Action (Plaintiffs Castillo and Flores and eighteen "opt-in" plaintiffs).

5.      After three mediation sessions with Magistrate Judge Alan Kay on December 20, 2007, February 22, 2008, and March 19, 2008, and extensive arm's length negotiations, the Parties have reached a proposed settlement that they believe to be fair, adequate and reasonable.

6.      The Parties now seek the Court's approval of the settlement because (1) this case includes claims under the FLSA, and (2) this case includes a Rule 23 class action.  Under the great weight of authority, claims under the FLSA may not be waived by purely private agreement.  A valid waiver may be accomplished, however, by court approval of the settlement, especially with a finding that a settlement is fair, reasonable, and adequate.  *E.g., Schulte v. Gangi*, 328 U.S. 108 (1946); *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1983); *Brask v. Heartland Automotive Services, Inc.,* No. 06-11 (RHK/AJB), 2006 WL 2524212, at *1-2 (D. Minn. Aug. 15, 2006).  In addition, F.R.C.P. 23 provides that parties must seek approval from the Court for any proposed settlement.  Accordingly, the Parties request that the Court approve the settlement of the FLSA claims of the 20 plaintiffs in the FLSA collective action and find the settlement to be fair, reasonable, and adequate.

7.      For the reasons set forth in the accompanying memorandum of points and authorities, the Parties respectfully request that this Court enter an order (a) certifying a class in the District Action for purposes of settlement; (b) appointing Plaintiffs' counsel as class counsel; and (c) approving the agreed-upon notice to potential class members of the District Action and proposed settlement.  Further, after a fairness hearing is conducted at the conclusion of the opt-out period described in the notice, the Parties request that the Court enter a subsequent Order (a) approving the settlement and the Parties' settlement agreement as fair, adequate and reasonable; and (b) dismissing the above-captioned case and the claims made therein with prejudice.

2

WHEREFORE, the Parties respectfully request that their motion be granted.

Respectfully submitted,

By /s/ Karla Grossenbacher
  Karla Grossenbacher (Bar #442544)
  SEYFARTH SHAW LLP
  815 Connecticut Avenue, N.W.
  Suite 500
  Washington, D.C. 20006-4004
  (202) 463-2400

  Attorneys for Defendant


By  /s/ Joni S. Jacobs
  Mark Hanna (Bar #471960)
  Joni S. Jacobs (Bar #493846)
  Davis, Cowell & Bowe, LLP
  1701 K Street, N.W., Suite 210
  Washington, DC  20006
  (202) 223-2620

  Arthur P. Roger (Bar #390844)
  D.C. Employment Justice Center
  727 15th Street, N.W., 2nd Floor
  Washington, DC  20005
  (202) 828-9675 ext. 18

  Attorneys for Plaintiffs


Dated:  May 12, 2008

DC1 30228244.2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARLOS CASTILLO, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:07-cv-01195 CKK |
| | ) |
| P & R ENTERPRISES, INC., | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE JOINT MOTION OF THE PARTIES TO APPROVE SETTLEMENT

Defendant P&R Enterprises, Inc. ("Defendant" or "P&R") and Plaintiffs (collectively, the "Parties") hereby submit this memorandum of points and authorities in support of the Joint Motion of the Parties to Approve Settlement.

INTRODUCTION

The Parties have resolved the claims at issue in the above-captioned case (the "Lawsuit") by negotiating a proposed settlement that embodies reasonable compromises that are fair to the Parties and are in the best interests of the Plaintiffs and class members. The proposed settlement is the result of months of extensive arm's length negotiations between the Parties, which included three separate mediation sessions before United States Magistrate Judge Alan Kay. The proposed settlement reflects a desire by the Parties to fully and finally settle and compromise the claims in the Lawsuit, as outlined more specifically in the attached proposed General Release and Settlement Agreement (the "Settlement Agreement," attached hereto as Exhibit A[1]). The parties now ask this Court to approve the proposed settlement for the reasons set forth below.

---

[1]     There are four exhibits to the Settlement Agreement. Only Exhibit D is attached to the Settlement Agreement that is attached to the Parties' motion. Exhibits A-C, as explained in the

<u>STATEMENT OF FACTS</u>

In June 2007, Plaintiffs Carlos Castillo and Carlos Flores filed the Lawsuit, alleging violations of the Fair Labor Standards Act ("FLSA"), the District of Columbia Minimum Wage Act Revision Act (DCMWA) and the District of Columbia Wage Payment and Wage Collection Act (the "DC Wage Payment Law"). Specifically, Plaintiffs Castillo and Flores alleged that they were not paid for all hours worked, including overtime, in conformance with applicable law. The FLSA and DCMWA claims were filed as a collective action (the "FLSA Collective Action"). The claim under the D.C. Wage Payment Law was filed as a class action under Rule 23 of the Federal Rules of Civil Procedure (the "District Action"). P&R denies all the material allegations set forth in Plaintiffs' complaint.

Over the course of several months, the Parties have participated in arm's length settlement negotiations and, as a result of such negotiations, have agreed to settle all claims in the Lawsuit. These negotiations involved three mediation sessions with United States Magistrate Judge Alan Kay on December 20, 2007, February 22, 2008, and March 19, 2008. The proposed settlement was reached in full compliance with Rule 1.8 of the Rules of Professional Conduct.

As set forth in the Settlement Agreement, each plaintiff in the FLSA Collective Action and each class member in the District Action who does not "opt out" and can be found will automatically receive an agreed-upon settlement payment pursuant to a formula that is based on the individual's status as a current or former part-time or full-time employee and the number of weeks during which he/she performed work for Defendant during the applicable statute of limitations. The settlement also provides for compensation to Plaintiffs' counsel and an

---

Settlement Agreement, contain lists of the individual plaintiffs and members of the putative class for purposes of settlement. They are still in the process of being prepared and will be quite voluminous. Should the Court wish to review these Exhibits, the Parties will make them available at or before the fairness hearing in the case, as the Court may direct.

2

enhancement bonus for Plaintiffs Castillo and Flores for their participation as class representatives.

On October 19, 2007, this Court conditionally certified an opt-in class in the FLSA Collective Action, and notice was issued to potential class members on or about November 30, 2007, to give the opportunity for potential class members to "opt-in" to the FLSA Collective Action. The period for "opting-in" to the FLSA Collective Action has expired. There are now 20 plaintiffs in the FLSA Collective Action (Plaintiffs Castillo and Flores and eighteen "opt-in" plaintiffs).

No class has been certified in the District Action as of yet. The parties have agreed, as part of the proposed settlement, to request that the Court certify a class for the District Action that includes all employees who performed cleaning work for Defendant in the District of Columbia as their primary duty between June 1, 2004 and April 28, 2008. The Parties have also agreed on a proposed Notice of Class Action Lawsuit and Proposed Settlement (attached as Exhibit B) to be sent to potential class members. The Parties request that this Court certify the proposed class, approve the agreed-upon Notice of Class Action Lawsuit and Proposed Settlement (the "Notice") (attached hereto as Exhibit B) to be sent to potential class members and appoint Plaintiffs' counsel as class counsel.

In reaching this proposed settlement, the Parties and their counsel have considered the interests of all concerned and are in agreement that those interests are best served by compromise, settlement, and dismissal of the Plaintiffs' claims with prejudice. The Parties have also agreed that the proposed settlement is fair, reasonable, adequate, and in the Parties' mutual best interests. For the reasons set forth below, the Parties jointly and respectfully request that the Court enter an Order approving the settlement as fair, adequate and reasonable.

DC1 30228247.2

ARGUMENT

I.    THIS COURT SHOULD CERTIFY THE PROPOSED CLASS IN THE DISTRICT
      ACTION FOR PURPOSES OF SETTLEMENT

       The Parties propose that this Court certify a class in the District Action for purposes of

settlement that consists of all individuals who performed cleaning work as their primary duty for

P&R in the District of Columbia between June 1, 2004, and April 28, 2008.  In determining

whether or not to certify a class for purposes of settlement, the Court must follow the same Rule

23 standards that apply when certifying a class during the course of litigation.  *Osher v. SCA

Realty I, Inc.*, 945 F. Supp. 298 (D.D.C. 1996).

       To be certified under Rule 23(a), the proposed class must be so numerous that joinder of

all members is impracticable; (2) there must be questions of law or fact common to the class; (3)

the claims or defenses of the representative parties must be typical of the claims or defenses of

the class, and (4) the representative parties must fairly and adequately protect the interests of the

class.  In addition, this case must also meet the requirements for class action treatment under

Rule 23(b), which provides, in relevant part, that an action may proceed (or be settled) as a class

action if (1) questions of law or fact common to members of the class predominate over

questions affecting only individual members, and (2) a class action is superior to other available

methods for the fair and efficient adjudication of the controversy.  The proposed class meets all

of these requirements.

       A.    Numerosity

       Rule 23(a)(1) provides that a class action may be maintained if the class is so numerous

that joinder of all members is impracticable.  The proposed class for the District Action is made

up of approximately 2800 people.  "Generally, 'courts have found that a proposed class

consisting of at least forty members will satisfy the impracticability requirement.'"  *Johnson v.

D.C.*, No. 02-2364, 2008 U.S. Dist. LEXIS 9069 at *12 (D.D.C. February 8, 2008) (quoting

4

*Bynum v. D.C.*, 214 F.R.D. 27, 30-31 (D.D.C. 2003)). Thus, the proposed class for the District Action easily meets the numerosity requirement.

B.    Commonality

The commonality requirement of Rule 23(a)(2) requires that there be questions of law or fact common to the class. "However, it is not necessary that every issue of law or fact be the same for each class member. Rather, if 'there is *some* aspect or feature of the claims which is common to all,' the requirement is satisfied." *Johnson*, 2008 U.S. Dist. LEXIS 9069 at *12 (quoting *Barnes v. D.C.*, 242 F.R.D. 113, 120 (D.D.C. 2007)). There are questions of law and fact common to the proposed class for the District Action, including but not limited to, whether or not class members performed work before or after their shifts or during unpaid breaks for which they were not paid and whether this time was compensable under applicable law. This is sufficient to satisfy the commonality requirement.

C.    Typicality

Moreover, the claims and defenses of Plaintiffs Castillo and Flores are typical of the class. "The typicality requirement of Rule 23(a)(3) is satisfied 'if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Johnson*, 2008 U.S. Dist. LEXIS 9069 at *14. The putative class is made up of individuals who performed cleaning work for Defendant in the District of Columbia as their primary duty between June 1, 2004 and April 26, 2008. Plaintiffs Castillo and Flores allege, on behalf of themselves and the putative class, that they were not compensated for time worked before and after their shifts and that they worked through their unpaid breaks on occasion. These claims are typical of those in the putative class. Although the amount of work allegedly performed at these times as well as the frequency with which such work was allegedly performed may vary from class member to class member, demonstrating typicality "does not

5

mean showing that there are no factual variations between the claims of the plaintiffs." *Bynum*, 214 F.R.D. at 35.

     D.    <u>Protecting Interests of the Class</u>

     Rule 23(a)(4) requires that certified classes have adequate representation both in terms of the named plaintiffs to serve as class representatives and class counsel's ability to protect the interests of absentee class members. "This requirement is met when: (1) there is no conflict of interest between the legal interests of the named plaintiffs and those of the proposed class; and (2) plaintiffs' counsel is competent to represent the class. *Johnson*, 2008 U.S. Dist. LEXIS 9069 at *14 (citing *Twelve John Does v. D.C.*, 117 F.3d 571 (D.C. Cir. 1997)). There does not appear to be any conflict of interest between Plaintiffs Castillo and Flores and the members of the proposed class in the District Action. In addition, Plaintiffs' counsel are experienced litigators who are capable of representing the class in a satisfactory manner.

     E.    <u>Predominance of Common Issues and Superiority of Class Action Treatment</u>

     A class action will often be found to be "superior to other available methods of adjudication" under Rule 23(b)(3) "when 'common questions of law or fact permit the court to consolidate otherwise identical actions into a single efficient unit.'" *Johnson*, 2008 U.S. Dist. LEXIS 9069 at *30-31 (quoting *Bynum*, 217 F.R.D. at 49)). Thus, the dual requirements of Rule 23(b)(13) are overlapping. The fact that this class is being certified for purposes of settlement is relevant to the analysis of whether certification is appropriate under Rule 23(b)(3). *See Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999), *aff'd*, 206 F.3d 1212 (D.C. Cir. 2000). *See also Amchen Products, Inc. v. Windsor*, 521 U.S. 591, 619 (1997) ("Settlement is relevant to a class certification").

     In *Pigford*, the district court held that the requirements of Rule 23(b)(3) were satisfied in connection with approving the settlement of a class action. The court found that the proposed

6

settlement resolved "common issues of whether and how best to provide relief to class members who lack documentation" and that those commons issues "predominate[d] over any questions affecting only individual members." 185 F.R.D. at 94. The court noted that the proposed class action settlement provided an "automatic cash payment" to class members and "creat[ed] a mechanism on a class-wide basis . . . to resolve the individual claims of class members . . . in a rather formulaic way" the allowed class members who lacked documentation or other evidence of their claims to an automatic recovery. *Id.* The court held that, in this way, the class action mechanism was the superior method for resolving the dispute. *Id.* at 94-95.

Similarly here, the members of the proposed class for the District Action share common issues as to how to obtain relief absent documentary evidence to substantiate their claims. Class members seek compensation for work that was allegedly performed "off the clock." Given the nature of the claim, there is no documentation of what work they performed, when they performed such work and how long it took them to perform it. This issue is common to all class members and predominates over other issues in the case for purposes of settlement. A class action settlement is a superior method by which to resolve this claim because the proposed settlement addresses this problem common to the class by establishing a formula pursuant to which class members receive an automatic payment.

Based on the foregoing, the proposed class for the District Action meets the criteria set forth in Rule 23, and this Court should certify the proposed class for purposes of settlement and approve the attached agreed-upon Notice to be sent to class members.

II.    **THE COURT SHOULD APPROVE THE SETTLEMENT OF THE LAWSUIT AS FAIR, ADEQUATE AND REASONABLE**

    A.    The Court's Approval of the Settlement is Required

This Court's approval of the settlement for both the FLSA Collective Action and the District Action is needed. With regard to the FLSA Collective Action, it is settled law that

employees and employers may settle private lawsuits under the FLSA only if the settlement is approved by a court or the Department of Labor. *See, e.g.*, *Schulte v. Gangi*, 328 U.S. 108 (1946); *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Brask v. Heartland Automotive Services, Inc.*, No. 06-11 (RHK/AJB), 2006 WL 2524212, at *1-2 (D. Minn. Aug. 15, 2006); *Thornton v. Solutionone Cleaning Concepts, Inc.*, No. 06-1455, 2007 U.S. Dist. LEXIS 8683, at *10-11 (E.D. Cal. Jan. 25, 2007); *Manning v. N.Y. Univ.*, No. 98 Civ. 3300 (NRB), 2001 U.S. Dist. LEXIS 12697 (S.D.N.Y. August 21, 2001), *aff'd*, 299 F.3d 156 (2d Cir. 2002), *cert. denied*, 123 S. Ct. 2092 (2003) (citing *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947) and *Bracey v. Luray*, 161 F.2d 128 (4th Cir. 1947)). The Court may approve a settlement of FLSA claims upon its determination that the settlement is fair and reasonable. *Schulte*, 328 U.S. 108; *Lynn's Food Stores*, 679 F.2d at 1353; *Brask*, 2006 WL 2524212 at *2; *Pessoa*, 2007 U.S. Dist. LEXIS 24076, at *6; *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003); *Boone v. City of Suffolk*, 79 F. Supp. 2d 603, 604 n.2 (E.D. Va. 1999).

As to the District Action, Rule 23 of the Federal Rules of Civil Procedure provides that class actions may be dismissed, settled or compromised only with the approval of the Court. Moreover, "[b]efore giving its approval, the Court must provide adequate notice to all members of the class, conduct a fairness hearing, and find, after notice and hearing, that the 'settlement is fair, adequate and reasonable and is not the product of collusion between the parties'." *Blackman v. D.C.*, 454 F. Supp.2d 3, 7 (D.D.C. 2006) (quoting *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir.), *cert. denied*, 525 U.S. 1033 (1998).

8

B.    Standard of Review

Courts asked to approve FLSA overtime settlement agreements operate under a "strong

presumption in favor of finding a settlement fair." *Pessoa, et al. v. Countrywide Home Loans,*

*Inc.*, No. 07-1419-Orl-JGG, 2007 U.S. Dist. LEXIS 24076, at *6 (M.D. Fla. Apr. 2, 2007)

(approving parties' settlement agreement in a FLSA overtime case) (citation omitted).   Likewise,

under Rule 23, it is "well-established that courts assume a limited role when reviewing a

proposed class action settlement . . . and should not substitute their judgment for that of counsel

who negotiated the settlement." *Osher v. SCA Realty I*, 945 F. Supp. 298, 304 (D.D.C. 1996).

"Rather, courts favor the resolution of dispute through voluntary compromise [and] [i]n the

context of class actions, settlement is particularly appropriate given the litigation expenses and

judicial resources required in many such suits." *Id.   See also In Re Vitamins Antitrust Litigation,*

305 F. Supp.2d 100 (D.D.C. 2004) ("The Rule 23 requirements are fully consistent with the

long-standing judicial attitude favoring class action settlements.")

C.    The Factors to be Consider in Reviewing a Proposed Settlement are All Met Here

Courts reviewing proposed settlements under the FLSA and Rule 23 consider a variety of

factors, but the principle inquiry is whether or not the proposed settlement is a "fair and

reasonable resolution of a bona fide dispute." *Pessoa,* 2007 U.S. Dist. LEXIS 24076, at *6.   *See*

*e.g., Lynn's Food Stores*, 679 F.2d at 1354; *Jarrard*, 163 F.2d at 961; *Brask*, 2006 WL 2524212

at *2; *Stalnaker*, 293 F. Supp. 2d at 1263.   "In this Circuit, there is 'no obligatory test' that the

Court must use to determine whether a settlement is fair, adequate and reasonable." *Blackman*,

454 F. Supp.2d at 8 (quoting *Pigford,* 206 F.3d at 1217)).   "Instead, the Court must consider the

facts and circumstances of the case, ascertain what factors are most relevant in the circumstance,

and exercise its discretion in deciding whether approval of the proposed settlement is fair." *Id*.

In making this determination, "courts in this Circuit have examined the following factors: (a)

9

whether the settlement is the result of arm's length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the status of the litigation at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *In Re Vitamins Litigation*, 305 F. Supp.2d at 104 (collecting cases) (citations omitted).

      1.     <u>The Settlement Is The Result of Arms-Length Negotiations</u>

"A presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins Antitrust Litigation*, 305 F. Supp.2d 100, 104 (D.D.C. 2004). Here, the proposed settlement is the result of extensive negotiations that took place over several months and involved three mediations sessions with U.S. Magistrate Judge Alan Kay. Both parties were represent by experienced counsel throughout this process and meaningful discovery was conducted, *see supra* Part. II. C.3 below. As a result of these negotiations, the Parties and their counsel believe that have reached a settlement that is fair, adequate and reasonable.

      2.     <u>The Terms Of The Settlement Are Fair and Reasonable In Relation To The Strength Of Plaintiffs' Case and the Bona Fide Disputes as to Liability</u>

"The most important factor in the Court's evaluation of a proposed class action settlement is how the relief secured by the settlement compares to the class members' likely recovery had the case gone to trial." *Blackman*, 454 F. Supp.2d at 9-10 (citing *Pigford II*, 206 F.3d at 1217). *See Thomas v. Albright,* 139 F.3d 227, 231 (D.C. Cir. 1998). Courts recognize, however, that "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re General Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Lit.*, 55 F.3d 768, 806 (3d Cir. 1995).

Plaintiffs in the FLSA Collective Action and the class members in the District Action claim that they performed work before and after their shift and during unpaid breaks for which

they were not compensated.  P&R generally denies the allegations in the Lawsuit.  In particular, Defendant disputes that either Plaintiffs or the class members performed such work.  In addition, Defendant asserts that, even if some individuals performed such work, it was not compensable because it was *de minimis* or because Defendant had no notice that it was being performed.

Moreover, in order to recover damages at trial, Plaintiffs and the class members will need to establish through admissible evidence that they performed this "off the clock" work.  Given the nature of an "off the clock" claim, there is often very little in terms of documentation to establish that work was performed, the nature and duration of the work and how often it was performed.  Thus, even if Plaintiffs and the class members establish liability against Defendant, there are genuine issues as to their ability to prove their damages.  The proposed settlement provides Plaintiffs and class members with a guaranteed cash payment, thereby obviating the need for them to provide documentation or other evidence in support of their recovery.  Moreover, Plaintiffs and class members will receive the payment within the next several months instead of waiting for the completion of discovery, briefing on class issues and an eventual trial and possible appeal.

Moreover, even if they were to prevail at trial and prove their damages, the ability of Plaintiffs and the class to recover at trial would still be uncertain given the costly and time-consuming nature of this type of complex litigation.  Had this litigation continued to trial, it is unclear if Defendant would have had the wherewithal to pay the costs and fees associated with defending itself, and in the event the class prevailed on their claims, to pay class counsel's fees plus any compensation due to the class.  The proposed settlement acknowledges the fact that, by the time any judgment would have been reached in the Lawsuit, Defendant might have been judgment-proof.  Settling the case now guarantees that Plaintiffs and the class members will receive compensation for their claims, and thus the terms of the settlement support this Court's

DC1 30228247.2

approval. *See In Re Baan*, 284 F. Supp. 2d at 66 (settlement approved where plaintiffs "faced a serious risk that the continued prosecution of the case – even if successful – would result in a judgment against Defendants that would be partially, if not completely, uncollectible.").

The proposed settlement provides that Plaintiffs in the FLSA Collective Action and the class members in the District Action will receive settlement payments pursuant to a formula that is based on the individual's status as a current or former part-time or full-time employee and the number of weeks he/she performed work for Defendant during the applicable statute of limitations. These payments are essentially automatic in the sense that class members are not required to submit claim forms in order to receive a settlement payment. Defendant will send checks to all class members who do not opt-out of the settlement and can be found.

When one balances the uncertainty of a recovery at a trial against the certainty of an automatic settlement payment, it is clear the proposed class action settlement is a superior method by which to resolve Plaintiff's and the class members' claims. The settlement is intended to provide class members with compensation for their claims in the Lawsuit without the need for lengthy litigation or the uncertainty of a trial and uncertain results. The proposed settlement "accomplishes [this] purpose[] through . . . . a resolution mechanism that provides those class members with little or no documentary evidence with a virtually automatic cash payment." *Pigford*, 185 F.R.D. at 95. Thus, the terms of the proposed settlement adequately and fairly compensate class members in light of the uncertainty of their recovery in litigation.

3.    Status Of Litigation At Settlement

This settlement has been reached after the Parties have had an opportunity to "assess the strengths and weaknesses of the claims and defenses and the adequacy of the proposed settlement" through formal and informal discovery. *In Re Baan*, 284 F. Supp.2d at 64. The Parties have had the opportunity to review thousands of time cards from a number of facilities

12

operated by P&R, as well as the corresponding payroll documentation. Plaintiffs' counsel has deposed members of P&R management as well as a corporate representative knowledgeable about P&R's payroll system and practices. The settlement has neither "come too early to be suspicious nor too late to be a waste of resources." *Vitamins Antitrust Litigation*, 305 F. Supp.2d at 105. Rather, this is a "desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense and litigation." *Id.*

      4.    <u>Reaction of Class to Settlement</u>

As part of this motion, the Parties seek approval of a notice to go out to all potential class members informing them of the class action lawsuit and proposed settlement. The proposed Notice provides for a 60-day period for potential class members to object to or comment on the settlement. Once that period expires, and if any comments or objections are received, the Court can factor them in to its final analysis at or after the fairness hearing. Even if some objections are received, "[t]he existence of even a relatively few objections certainly counsels in favor of approval [of settlement]." *In Re Lorazepam & Clorazepate Antitrust Litigation*, No. 99cv276, 2003 U.S. Dist. LEXIS 12344 at *19 (D.D.C. June 16, 2003). Each of the 18 "opt in" plaintiffs has been informed of the terms of the settlement, and each has indicated his or her acceptance of the settlement. This provides both a barometer of how the class overall will react to the settlement, and a strong indication of its fairness and reasonableness.

      5.    <u>Opinion of Experienced Counsel</u>

Counsel for the Parties in this case believe the settlement to be fair, adequate and reasonable. Both counsel are experienced in collective and/or class action litigation. Both counsel were involved in the extensive arm's length negotiation of which the proposed settlement is a product and this supports the approval of the settlement. "Although this Court will not defer blindly to the views of counsel with regard to the adequacy of settlement, it must

consider that the Settlements were reached after several months of arms' length negotiation by experienced counsel and that both counsel and all parties involved view the settlement as reasonable." *See e.g., Vitamins Antitrust Litigation*, 305 F. Supp.2d at 106. *See also In Re Lorazepam*, 2003 U.S. Dist. LEXIS 12344 at *19-20 (the "[o]pinion of such experienced and informed counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement).

For the foregoing reasons, the Court should approve the proposed settlement of the Lawsuit as fair, adequate and reasonable.

<u>CONCLUSION</u>

For the reasons set forth above, the Parties respectfully request that their motion be granted, and that this Court enter an order (a) certifying the proposed class in the District Action; (b) appointing Plaintiffs' counsel as class counsel; and (c) approving the attached Notice to potential class members. Further, after a fairness hearing is conducted, the Parties request that the Court enter a subsequent Order (a) approving the settlement and the attached settlement agreement as fair, adequate and reasonable; and (b) dismissing the Lawsuit and the claims made therein with prejudice.

Respectfully submitted,

By  /s/ Karla Grossenbacher
    Karla Grossenbacher (Bar #442544)
    SEYFARTH SHAW LLP
    815 Connecticut Avenue, N.W.
    Suite 500
    Washington, D.C. 20006-4004
    (202) 463-2400
    *Attorneys for Defendant*

By  /s/ Joni S. Jacobs
    Mark Hanna (Bar #471960)
    Joni S. Jacobs (Bar #493846)
    Davis, Cowell & Bowe, LLP
    1701 K. Street, N.W., Suite 210

14

Washington, D.C. 20006
(202) 223-2620

Arthur P. Roger (Bar #390844)
D.C. Employment Justice Center
727 15th Street, N.W. 2nd Floor
Washington, D.C. 20005
(202) 828-9675 ext. 18
*Attorneys for Plaintiff*

Dated:  May 12, 2008

15

## GENERAL RELEASE AND SETTLEMENT AGREEMENT

This Agreement is entered into by and between Carlos Castillo and Carlos Flores, on behalf of themselves and their officers, agents, assignees, heirs, executors, beneficiaries, and legal representatives (hereinafter "Plaintiffs") and P&R Enterprises, Inc. (hereinafter, the "Company").

WHEREAS, Plaintiffs have asserted claims against the Company in a collective action under the Fair Labor Standards Act and the D.C. Minimum Wage Revision Act (the "FLSA Collective Action");

WHEREAS, Plaintiffs have asserted claims against the Company in a class action under District of Columbia Wage Payment and Wage Collection Act (the "District Action");

WHEREAS, the FLSA Collective Action and the District Action are pending in the United States District Court for the District of Columbia in the same case, which is denominated Civil Action No. 1:07-cv-0l195 CKK (hereinafter, the "Lawsuit");

WHEREAS, Plaintiffs seek compensatory damages in the Lawsuit resulting from, *inter alia*, the alleged violations, as well as liquidated damages, attorneys' fees, and Plaintiffs have made a claim for such damages and fees;

WHEREAS, the parties desire to resolve the Lawsuit, without admission of liability by the Company, in order that the parties might avoid the expense and inconvenience of further litigation;

NOW, THEREFORE, in consideration of the mutual promises contained herein, the parties agree to the following:

**Section 1.**      **Certification of Class**

1.1.    For purposes of settling the Lawsuit, the parties stipulate and agree that the requisites for establishing class action certification for the District Action have been met and are met, and therefore stipulate to class certification for settlement purposes. The parties agree to certify a class in the District Action that includes all individuals who performed cleaning work for the Company in the District of Columbia as their primary duty between June 1, 2004, and April 30, 2008 (the "District Class").

1.2.    In addition, the parties stipulate and agree that:

a.    The District Class is so numerous as to make it impracticable to join all members;

b.    The District Class is an ascertainable class;

c.    There are common questions of law and fact including, but not necessarily limited to, whether or not the District Class was paid for all hours worked;

d.    Plaintiff Castillo's and Plaintiff Flores' claims are typical of the claims of the members of the District Class;

e.    Plaintiffs' counsel, listed below, should be appointed as Class Counsel and will fairly and adequately protect the interests of the District Class:

> Arthur P. Rogers
> D.C. EMPLOYMENT JUSTICE CENTER
> 727 15th Street, NW, 2nd Floor
> Washington, DC 20005
> Tel. (202) 828-9675 ext. 18 or 21
>
> Mark Hanna
> Joni S. Jacobs
> DAVIS, COWELL & BOWE, LLP
> 1701 K Street, NW
> Washington, DC 20006

Tel. (202) 223-2620

    f.      The prosecution of separate actions by individual members of the District Class would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct;

    g.     Questions of law and fact common to the members of the District Class predominate over questions affecting individual members in the District Class, and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

1.3.    The parties agree that Rule 23 certification for the District Class is for settlement purposes only.  Nothing in this Agreement shall be construed as an admission or acknowledgment of any kind that any class should be certified in the Lawsuit or in any other action or proceeding.  In the event this Agreement is not approved by the Court, fails to become effective or is reversed, withdrawn or materially modified by the Court, (a) the proposed settlement will be null and void; (b) the certification of the District Class, or any agreement to certify such a class, will automatically be null and void and the fact of it shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; and (c) neither party will be deemed to have waived any claims, objections, defenses or arguments with respect to the issue of class certification or maintenance of the Lawsuit as a class action.

1.4.    The parties agree promptly to move the Court for an Order (a) certifying the District Class as described above; (b) approving a mutually-agreed-upon notice to go out to potential class members of the District Class regarding the Lawsuit and the proposed settlement; and (c) approving this Agreement.  The parties agree to take all necessary actions to carry out the

3

terms of this Agreement, and neither will instigate or take any action contrary to or inconsistent with their commitment to seek prompt approval and implementation of this Agreement.

**Section 2.**      **Settlement Payments**

In consideration of the promises contained in this Agreement, the parties agree:

2.1.      Settlement Payment to Plaintiffs in the FLSA Collective Action and Class Members in the District Action.

(a)      The Company will pay each individual who has "opted-in" to the FLSA Collective Action and who is also a member of the District Class, in full and complete satisfaction of all claims, an amount equal to 1.5 hours per week for each week during which that individual performed work for the Company within the applicable statute of limitations based on 40 full work weeks per year at the rate of $9.10/hr. if he/she is/was a part-time employee and $9.80/hr. if he/she is/was a full-time employee. Attached hereto as Exhibit A is a list of each of the individuals who has "opted in" to the FLSA Collective Action and is also a member of the District Class. Exhibit A also lists the employment status of each such individual, his/her date of hire and the last payroll period for which s/he received a paycheck.

(b)      The Company will pay each individual who is a member of the District Class but who has not "opted in" to the FLSA Collective Action and who is a current employee of the Company as of April 30, 2008, an amount equal to 0.75 hours per week for each week during which that individual performed work for the Company within the applicable statute of limitations based on 40 full work weeks per year at the rate of $9.10/hr. if he/she is/was a part-time employee and $9.80/hr. if he/she is/was a full-time employee. Attached hereto as Exhibit B is a list of each individual who is a member of the District Class but who has not "opted in" to the FLSA Collective Action and who is a

4

current employee of the Company as of April 30, 2008.  Exhibit B also lists the

employment status of each such individual, his/her date of hire and that last payroll

period for which s/he received a paycheck.

(c)     The Company will pay each individual who is a member of the District

Class but who has not "opted in" to the FLSA Collective Action and who is no longer a

current employee of the Company as of April 30, 2008 an amount equal to 0.50 hours per

week for each week during which that individual performed work for the Company

within the applicable statute of limitations based on 40 full work weeks per year at the

rate of $9.10/hr. if he/she is/was a part-time employee and $9.80/hr. if he/she is/was a

full-time employee.  Attached hereto as Exhibit C is a list of each individual who is a

member of the District Class but who has not "opted in" to the FLSA collective action

and who is no longer a current employee of the Company as of April 30, 2008.  Exhibit C

also lists the employment status of each such individual, his/her date of hire and that last

payroll period for which they received a paycheck.

(d)     The "applicable statute of limitations" for each plaintiff in the FLSA

Collective Action is the three years preceding the date on which each plaintiff filed his or

her opt-in notice with the Court, extended by four weeks pursuant to previous agreement.

The "applicable statute of limitations" for the District Action is the period from June 1,

2004 through April 30, 2008.

(e)     The determination of whether an individual who receives a payment

pursuant to this section of the Agreement is/was a part-time or full-time employee as

those terms are defined in the applicable collective bargaining agreement and employee

handbook and how many weeks they performed work for the Company will be made

based on the information in the Company's records.  The information set forth on

Exhibits A, B and C is final and binding for purposes of the settlement of the Lawsuit,

provided that any individual who receives a check pursuant to this Agreement shall have

the opportunity, within 90 days of the date on which the check was mailed, to present to

Plaintiffs' counsel paystubs establishing that  his/her employment status or the number of

weeks during which he/she performed work for the Company is different from that

shown in the Company's records.  If the pay stubs do, in fact, establish a different

employment status or number of weeks worked within the applicable statute of

limitations, this information will be used to recalculate a new settlement amount.  No

such challenges to the settlement amount shall be considered after the 90-day period has

elapsed or if the individual's check has been cashed.  Pay stubs shall be the only type of

evidence of employment status and number of weeks worked that will be considered

sufficient to rebut the information in the Company's records.

      (f)     The Company will certify under oath that the Exhibits A through C

accurately reflect the information contained in its business records kept in the normal

course of business as of April 30, 2008.

      (g)     For purposes of the calculation based on 40 full workweeks per year, it is

understood that the Company will multiply the actual number of weeks worked during a

calendar year by the individual by .77, rounding up to the nearest full week.

2.2.   <u>Class Representative Enhancement Award</u>.  The Company will pay Plaintiffs

Castillo and Flores an additional payment of $3000.00 each for their participation as class

representatives in the Lawsuit.

DC1 30227655.4

2.3.    <u>Attorneys' Fees</u>.  The Company will issue a check made payable to the "D.C. Employment Justice Center" in the amount of $117,000.00 representing reimbursement of attorneys' fees.  The Company will also issue a check made payable to the "D.C. Employment Justice Center" for $4000.00 for reimbursement of costs incurred in the Lawsuit.

2.4.    Provided that (a) the Company has first received an original of this Agreement signed by Plaintiffs Castillo and Flores, and copies of Exhibit D with the original signatures of each Plaintiff and "opt in" person listed on Exhibit A and (b) the Court has approved this Agreement without material modification after conducting a fairness hearing on the settlement of the FLSA Collection Action and the District Action, the Company agrees to make the payments described in Section 2 of this Agreement on the following schedule:

(a)    50% of the payments called for in Sections 2.2 and 2.3 shall be made on or before August 30, 2008.  The remaining 50% of the payments called for in Sections 2.2 and 2.3 shall be made on or before March 31, 2009.  These checks will be delivered directly to Plaintiffs' Counsel.

(b)    Each individual in the Former Employee Group (as defined in Section 3.1 below) will receive 50% of the total amount he or she is owed on or before September 30, 2008.  Each individual in the Former Employee Group will receive the remaining 50% of what they are owed on or before March 31, 2009.  Notwithstanding the foregoing, nothing in this Agreement shall prohibit the Company, in its sole discretion, from paying the full amount owed to an individual in the Former Employee Group on or before September 30, 2008, if it so chooses.  The checks to the Former Employee Group will be distributed in the manner set forth in Section 3 of this Agreement.

(c)      Beginning with the first payroll period following the Effective Date of this Agreement, current employees will receive the amounts they are owed under this Agreement through the Company's payroll system in the same manner and on the same schedule that they receive their regular paychecks.  Current employees entitled to payment under Section 2.1(a) will receive 1.5 hours per week in addition to their normal compensation for hours worked, and current employees entitled to payment under 2.1(b) shall receive .75 hours per week in addition to their normal compensation for hours worked in each payroll period until the amount they are owed under this Agreement has been paid, provided that, if the total amount owed has not been paid prior to last payroll date in March 2009, the employee will receive the balance owed to him/her on the last payroll date in March 2009.  If an individual who is a current employee of the Company as of April 30, 2008, separates from employment with the Company for any reason prior to the Effective Date of this Agreement, that individual shall be paid on the same schedule and in the same manner as those in the Former Employee Group.  If an individual who is a current employee of the Company as of April 30, 2008, separates from employment with the Company after the Effective Date of this Agreement and has not received all amounts due to him/her or her under this Agreement, the Company shall mail a check to that individual for the balance of what is owed to them under the Agreement within two weeks of his/her separation from employment to the address for that individual on file with the Company at the time of separation.

(d)  Nothwithstanding the foregoing or anything to the contrary in this Agreement, if the Company does not receive a signed original of Exhibit D from an individual listed on Exhibit A, that individual will not receive the payment described in Section 2.1(a) of this Agreement.

2.5.    Tax Treatment.

8

DC1 30227655.4

(a)     The settlement amounts to be paid pursuant to Section 2.1 of this Agreement are and shall be treated as wages.  Therefore, applicable payroll deductions will be made from each check and an IRS Form W-2 will issue to each payee.

(b)     The settlement amounts to be paid pursuant to Sections 2.2 and 2.3 shall not be treated as wages. Plaintiffs Castillo and Flores and Plaintiffs' counsel agree that each shall be solely and fully responsible for the payment of any taxes, interest or penalties due as a result of the payments they receive pursuant to Sections 2.2 and 2.3 of this Agreement, and that each will hold harmless and indemnify the Company, as to each of their respective payments, for any tax liability incurred by it as a result of the fact that no income tax or other withholdings were made from the payments made pursuant to subparagraphs 2.2 and 2.3 or that such payments were not treated in any way as wages or salary. Prior to receiving the payment indicated in paragraph 2.3, the D.C. Employment Justice Center will provide the Company with a completed IRS Form W-9.

**Section 3.        Distribution of Checks to Former Employees in the FLSA Collective Action and Members of the District Class**

3.1.    Payments made to those individuals on Exhibit C and those individuals on Exhibit A and B who are not employed by the Company as of the Effective Date of this Agreement (the "Former Employee Group") shall be made in the following manner:

a.      Within five business days of the Court's approval of the Notice of Class Action Lawsuit and Proposed Settlement to the District Class in English and Spanish (the "Notice"), the Company shall deliver a list of last known addresses for the individuals in the District Action to CAC Direct Marketing Services ("CAC"), and shall notify Plaintiffs' counsel of the delivery of the addresses to CAC.  CAC shall run these addresses through the National Change of Address Database to ensure the highest possible number of deliveries.  CAC shall then promptly prepare

9

the mailing and mail the Notice to the District Class.  The parties shall provide the Notice to

CAC.  The Notice shall be mailed in envelopes printed by CAC with the D.C. Employment

Justice Center's logo and address as the return address.  Within two business days of the mailing,

CAC shall notify Plaintiffs' counsel of the date of the mailing.

        b.      The Company shall provide CAC with checks for the payments called for in

Section 2 of this Agreement to those employees in the Former Employee Group who did not

"opt-out" of the District Action at the times specified in Section 2.4(b).  The checks will state, in

English and in Spanish, that (1) the checks must be cashed at a financial institution and (2) by

signing and cashing the check the payee acknowledges that he/she has read the Notice in the

Lawsuit, including the general release of claims contained in the Notice, and understands its

contents.  Either the settlement check or the attached pay stub or a cover letter enclosed with the

check will state that the settlement checks may be cashed at any SunTrust Bank even if the

individual cashing the check does not have an account with SunTrust.  The checks shall be

mailed in envelopes printed by CAC with the D.C. Employment Justice Center's logo and

address as the return address.  Within two business days of the mailings, CAC shall notify

Plaintiffs' counsel of the date of the mailing.  The Company shall pay all costs associated with

the mailing of both the Notice and the checks.

        c.      Notwithstanding the foregoing, or anything to the contrary in this Agreement, the

Company shall not be required to issue or cause to be mailed a check to any member of the

Former Employee Group whose Notice or check is returned to CAC as "address unknown" or

otherwise undeliverable, unless the Company has received a corrected address for any such

payee before the date on which checks are to be mailed or within 90 days of the date on which a

check to that payee was mailed, at which point the Company shall mail a check to the corrected

address.

        d.      Any checks mailed out by CAC that are returned as "address unknown" and that

remain undeliverable shall be deemed null and void and the monies represented in those checks

shall revert back to and become the sole property of the Company.

        e.      The settlement checks shall become null and void on the 90th day after the date

on which they are mailed by CAC.  The monies represented in those checks that are not cashed

as of the 90th day shall revert back to and become the sole property of the Company.

        f.      The Company will maintain within its custody or control records that show the

total amount to be paid to each class member in the District Action, which checks were cashed

and which checks were not cashed within 90-days of the date on which they were mailed by

CAC, and which checks were returned as "address unknown" or otherwise undeliverable.

Plaintiffs' counsel may review these records upon request but not more frequently than once

every 60 days between the date on which the checks are issued and 150 days thereafter.

## Section 4.     Releases

        4.1.    In exchange for the payments described in Paragraph 1, Plaintiffs and the "opt in"

plaintiffs, and each of them, agree to execute the release and covenant not to sue attached hereto

as Exhibit D.

        4.2.    Members of the District Class (*i.e.*, any class member who does not opt out of the

District Action) will be bound by the following release pursuant to Fed.R.Civ.Pro.23:

> In exchange for the settlement payment, I, for myself and for
> anyone who has or who obtains legal rights or claims from me,
> forever release and discharge P&R Enterprises, its owners,
> officers, directors, employees, agents, assigns, representatives,
> attorneys, affiliates, benefit plans, plan fiduciaries and/or
> administrators, and all persons acting by, through, under or in
> concert with any of them, including any party that was or could

11

DC1 30227655.4

have been named as a defendant in the lawsuit styled *Castillo, et at. v. P&R Enterprises, Inc.*, Case No. 07-cv-1195 (CKK), U.S. District Court for the District of Columbia, from any and all claims and causes of action, of any kind whatsoever, whether arising under federal, state or other applicable law, that I have or may have, known or unknown, for overtime or unpaid wages that were or could have been asserted in the Lawsuit and that arose during the period June 1, 2004 and April 30, 2008 ("Released Claims"). The Released Claims include, but are not limited to,the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., the District of Columbia Minimum Wage Revision Act, the District of Columbia Wage Payment and Wage Collection Act, any common law claim for compensation and overtime compensation, breach of express or implied contract, quasi contract, quantum meruit, breach of duty of good faith, promissory estoppel, and unjust enrichment. This release includes and encompasses therein any and all claims with respect to attorneys' fees, costs, and expenses (provided by statute or otherwise) for or by any and all attorneys, if any, who have represented me or with whom I have consulted or who have done anything in connection with the Lawsuit and/or any of the claims released herein.

**Section 5.**       **Other Provisions**

5.1.   <u>Voluntariness</u>. Each Plaintiff hereby acknowledges that he understands the terms of this Agreement and is entering into this Agreement voluntarily.

5.2.   <u>Confidentiality</u>.  Plaintiffs agree that, as a condition of this Agreement, the terms and provisions of this Agreement shall not be disclosed, publicized, published, referred to or, in any other manner communicated to or with any other person except to their attorney(s), spouses or tax advisor(s) or as required by law or court order.  If Plaintiffs are asked about the Agreement by anyone other than those listed in the preceding sentence, Plaintiffs will state only that "the matter has been confidentially resolved" and will make no other comment. If disclosure is made by Plaintiffs to their attorney(s), spouse or tax advisor(s) or as required by law or court order, Plaintiffs shall first inform such person(s) of the restrictions imposed by this paragraph and obtain their agreement to honor those restrictions and take reasonable steps to ensure that they do.  Plaintiffs further represent that no disclosures prohibited by this paragraph were made prior

12

to the signing of this Agreement.  Plaintiffs' counsel also agree that, although they may refer to the fact that they assisted Plaintiffs in obtaining a settlement, they will not refer to the Company by name in any such announcement.

5.3.    <u>Effective Date.</u>  The Effective Date of this Agreement is when the Court approves this Agreement and the Company has received an original of this Agreement and Exhibit D signed by Plaintiffs Castillo and Flores.

5.4.    <u>No Admission of Liability</u>.  This Agreement is not an admission of liability; it does not constitute any factual finding or legal precedent; and it may not be used as evidence in any proceeding, except in an action alleging a breach of this Agreement or to enforce the provisions of this Agreement.

5.5.    <u>Parties to Bear Fees and Costs</u>.  Except as specifically provided herein, the parties to this Agreement shall bear their own attorneys' fees, expenses and costs incurred as a result of or in association with the Lawsuit.

5.6.    <u>Severability</u>.  The provisions of this Agreement are severable. If any provision is held invalid or unenforceable, it shall not affect the validity or enforceability of any other provision.

5.7.    <u>Entire Understanding</u>.  This document constitutes the entire understanding and agreement between the Parties. Any modification of the Agreement must be in writing signed by both Parties.

5.8.    <u>Modifications</u>.  This Agreement may not be modified in any manner, except in writing signed by each of the parties hereto.

DC1 30227655.4

    5.9.    <u>Counterparts</u>.  This Agreement can be executed in counterparts.

P&R ENTERPRISES, INC.

By: _____

Print Name: _____

Title: _____

Date: _____

CARLOS FLORES

Signature: _____

Print Name: _____

Date: _____

CARLOS CASTILLO

Signature: _____

Print Name: _____

Date: _____

## EXHIBIT D

       In exchange for the settlement payment I am receiving in connection with *Castillo, et al. v. P&R Enterprises, Inc.*, Civil Action No. 1:07-cv-0l195 CKK, U.S. District Court for the District of Columbia, (the "Lawsuit"), I, for myself and for anyone who has or who obtains legal rights or claims from me, forever release and discharge P&R Enterprises, its owners, officers, directors, employees, agents, assigns, representatives, attorneys, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Lawsuit, from any and all claims and causes of action, of any kind whatsoever, whether arising under federal, state or other applicable law, that I have or may have, known or unknown, for unpaid wages that were or could have been asserted in the Lawsuit and that arose during the period June 1, 2004 and April 30, 2008 ("Released Claims"). The Released Claims include, but are not limited to,the Fair Labor Standards Act, the District of Columbia Minimum Wage Revision Act, the District of Columbia Wage Payment and Wage Collection Act, any common law claim for compensation and overtime compensation, breach of express or implied contract, quasi contract, quantum meruit, breach of duty of good faith, promissory estoppel, and unjust enrichment. This release includes and encompasses therein any and all claims with respect to attorneys' fees, costs, and expenses (provided by statute or otherwise) for or by any and all attorneys, if any, who have represented me or with whom I have consulted or who have done anything in connection with the Lawsuit and/or any of the claims released herein.

PRINT NAME:      _____

SIGNATURE:      _____

DATE:      _____

DC1 30227655.4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CARLOS CASTILLO, et al., | ) | Case No. 07-cv-1195 (CKK) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| P & R ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**NOTICE OF CLASS ACTION LAWSUIT AND PROPOSED SETTLEMENT**

1. <u>What is this notice about?</u>

This court-authorized notice is to inform you that a class action lawsuit is pending that involves all workers who were employed by P & R Enterprises, Inc. (the "Defendant") to clean buildings in the District of Columbia at any time between June 1, 2004 and April 30, 2008, and that a settlement has been proposed by the parties in the case. This notice explains what the lawsuit is about, the terms of the proposed settlement and your legal rights and options.

2. <u>What is the lawsuit about?</u>

Carlos Castillo and Carlos Flores (the "Plaintiffs") worked for Defendant in the District of Columbia between June 2004 and November 2006. They have sued the Defendant, claiming, among other things, that Defendant did not pay them for time they worked before and after their shifts and while they were supposed to be on break, in violation of the District of Columbia Wage Payment and Wage Collection Act (the "Unpaid Wages Claim"). They seek to be paid for all the time they worked for which they have not been paid since June 1, 2004, plus an equal amount of money as liquidated damages, plus their attorneys' fees and costs.

3. <u>What is a class action lawsuit?</u>

Plaintiffs bring the Unpaid Wages Claim as a class action on behalf of themselves and all potential class members. In a class action, one court resolves the issues for all class members, except those who exclude themselves from the class. The potential class members in this class are all workers who were employed by the Defendant to clean

1

buildings in the District of Columbia at any time since June 1, 2004 to April 30, 2008. Mr. Castillo and Mr. Flores are the "Class Representatives."

4.  Has the Court decided who is right or wrong in the lawsuit?

The Court has not made any rulings on whether the Plaintiffs or Defendant are right. Nothing in this Notice should be understood as a statement about who the Court believes is right or may be right. P&R denies Plaintiffs' allegations and maintains, among other things, that no work was performed for which employees were not paid and that any failure to properly compensate its employees was not condoned by P&R and is inconsistent with its policies. P&R also asserts that it exercised good faith in its efforts to comply with applicable law.

5.  Why did I get this notice?

You received this notice because the lawyers for Plaintiffs and/or Defendant have information that indicates you were employed by the Defendant to clean buildings in the District of Columbia between June 1, 2004 to April 30, 2008.

6.  Do I have a lawyer in this case?

The Court has appointed the following attorneys as "Class Counsel" to represent you and other class members.

| | |
|---|---|
| Arthur P. Rogers | Mark Hanna |
| D.C. EMPLOYMENT JUSTICE CENTER | Joni S. Jacobs |
| | DAVIS, COWELL & BOWE, LLP |
| 727 15th Street, NW, 2nd Floor | 1701 K Street, NW, Suite 210 |
| Washington, DC 20005 | Washington, DC 20006 |
| Tel. (202) 828-9675 ext. 21 or 18 | Tel. (202) 223-2620 |

You do not have to pay Class Counsel. If you want to be represented by your own lawyer and have that lawyer appear in court for you in this case, you may hire one at your own expense.

7.  Why is there a settlement?

The court did not decide in favor of the Plaintiffs or the Defendant. Instead, after extensive negotiations, both sides agreed to settle. That way, they avoid the risks and cost of a trial and the people affected will get a chance to receive compensation. The Class Representatives and Class Counsel think the settlement is best for all class members. The settlement does not mean that Defendant did anything wrong.

8.  How do I know if I am part of the settlement?

    If you received this notice in the mail, you have already been identified as a potential class member.  If you do not exclude yourself, as explained below, you will be part of the class action lawsuit and settlement.

9.  How much will I receive under the settlement?

    If you do not exclude yourself from this class action lawsuit and settlement, as explained below, you will receive money pursuant to one of the following formulas, depending on whether you were full-time or part-time and whether you are currently employed by Defendant:

    Part-time former employees:  You will be paid for 30 minutes of work at a rate of $9.10/hr. for each week in which you performed worked for Defendant between June 1, 2004 and April 30, 2008, based on a maximum of 40 full workweeks in a calendar year.

    Full-time former employees:  You will be paid for 30 minutes of work at a rate of $9.80/hr. for each week in which you performed worked for Defendant between June 1, 2004 and April 30, 2008, based on a maximum of 40 full workweeks in a calendar year.

    Part-time current employees:  You will be paid for 45 minutes of work at a rate of $9.10/hr. for each week in which you performed worked for Defendant between June 1, 2004 and April 30, 2008, based on a maximum of 40 full workweeks in a calendar year.

    Full-time current employees:  You will be paid for 45 minutes of work at a rate of $9.80/hr. for each week in which you performed worked for Defendant between June 1, 2004 and April 30, 2008, based on a maximum of 40 full work weeks in a calendar year.

    ***Example***, if you worked full time for Defendant from August 1, 2004 to September 30, 2005, your settlement amount would be calculated as follows:

    8/01/04 to 12/31/04 = 21 weeks x .77* = 17 weeks (rounded up)
        (* The .77 multiplier for a maximum of 40 full workweeks in a year)
    1/01/05 to 9/30/05 = 39 weeks  x .77  = 31 (rounded up)
    17 + 31 = 48 weeks total
    30 minutes per week x 48 weeks  = 1440 minutes (24 hours)
    24 hours x $9.80/hr = $235.20

3

Your status as full-time or part-time and the number of weeks you performed work for the Defendant between June 1, 2004, and April 30, 2008, will be determined from the information contained in Defendant's records as of April 30, 2008. **You will be bound by Defendant's records as to the check(s) you received unless you produce pay stubs showing that you worked more time for Defendant within 90 days of the date on which the settlement check(s) is mailed**.

As part of the settlement, Class Counsel will receive $117,000 in attorneys' fees and $4,000 in costs in this case. This is only a portion of the attorneys' fees and costs spent pursuing the claims raised in this lawsuit. Class Counsel agreed to significantly reduce the claim for attorneys' fees in order to settle this case. Plaintiffs Castillo and Flores as Class Representatives will each receive an additional payment of $3,000 for their efforts in initiating and pursuing this lawsuit. Defendant is making these payments directly to Class Counsel and the Class Representatives; they do not come out of your share of the settlement amount.

10. When will I receive the settlement amount?

      If you do not exclude yourself from this class action lawsuit and settlement, as explained below, you will receive payment according to the following schedule:

      Former employees of Defendant: 50% on or before September 30, 2008, and 50% on or before March 31, 2009.

      Current employees of Defendant: Beginning with the first payroll period following the effective date of the settlement, each paycheck will include an extra 45 minutes at $9.10/hour or $9.80/hour, depending upon whether you are part-time or full-time, until all payment due is received, or no later than the last payroll period in March 2009.

      Unless you wish to dispute the amount of money you are owed under the settlement, you must cash any settlement check you receive within 90 days of the date on which the check is mailed or it will be null and void. If you wish to dispute the amount of money you are owed under the settlement, you cannot cash the check, and within the 90-day period of time to cash the settlement checks, you must provide Class Counsel, at the address in No. 6 above, pay stubs showing the period of time you worked for Defendant.

11. What are the decisions that I need to make?

      You need to decide if you want to participate in this class action lawsuit and settlement. **If you want to participate, you do not need to do anything. You will be**

**automatically included.  You only need to take action if you DO NOT wish to participate in this class action lawsuit.**

12. How do I exclude myself from this class action lawsuit and settlement?

    If you DO NOT wish to participate in this class action lawsuit, you must send a letter by mail saying that you want to be excluded from *Castillo, et al. v. P&R Enterprises, Inc.*, Case No. 07-cv-1195 (CKK).  Be sure to include your full name, address, your signature and date on the letter.  You must mail your request for exclusion postmarked by **[30 days from the date the notice is mailed]** to Class Counsel at the address in No. 6 above and they will inform the Court and Defendant of your request for exclusion.  If you do not exclude yourself, you will be part of this class action lawsuit and settlement.

13. If I do not exclude myself, can I sue Defendant for the same thing later?

    **Unless you exclude yourself, you give up any claim that this settlement resolves, including claims for overtime and unpaid wages**.  You must exclude yourself from the class action lawsuit and settlement if you wish to sue the Defendant or file a complaint with a government agency over any claim that you are entitled to be paid for overtime or for time worked before or after your shift, or while you were on break, from June 1, 2004 through April 30, 2008.  Specifically, if you do not exclude yourself from this class action lawsuit and settlement, you will be bound by the following release of claims:

        In exchange for the settlement payment, I, for myself and for anyone who has or who obtains legal rights or claims from me, forever release and discharge P&R Enterprises, its owners, officers, directors, employees, agents, assigns, representatives, attorneys, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the lawsuit styled *Castillo, et al. v. P&R Enterprises, Inc.*, Case No. 07-cv-1195 (CKK), U.S. District Court for the District of Columbia, from any and all claims and causes of action, of any kind whatsoever, whether arising under federal, state or other applicable law, that I have or may have, known or unknown, for overtime or unpaid wages  that were or could have been asserted in this lawsuit and that arose during the period June 1, 2004 and April 30, 2008 (the "Released Claims").  The Released Claims include, but are not limited to, claims under the Fair Labor Standards Act, the District of Columbia Minimum Wage Act Revision Act, the District of Columbia Wage Payment and Wage Collection Act, and any

common law claim for compensation, breach of express or implied contract, quasi meruit, quantum meruit, breach of duty of good faith, promissory estoppel, and unjust enrichment. This release includes and encompasses therein any and all claims with respect to attorneys' fees, costs, and expenses (provided by statute or otherwise) for or by any and all attorneys, if any, who have represented me or with whom I have consulted or who have done anything in connection with the Lawsuit and/or any of the claims released herein.

14. <u>What if I want to be part of the class action lawsuit and the settlement, but object to the terms of the settlement</u>?

You can comment on the settlement if you do not like some part of it. The Court will consider your views. To do so, you must send in a written objection. Be sure to include the case name and number (*Castillo, et al. v. P&R Enterprises, Inc*. Case No. 07-cv-1195 (CKK), your full name, address, telephone number, your signature, the specific reasons why you object to the settlement, and any legal support you wish to bring to the Court's attention and any evidence you wish to give in support of your objection. You must mail your objection postmarked by **[30 days from the date the notice is mailed]** to Class Counsel at the address in No. 6 above and they will provide a copy of the objection to the Court and Defendant. If you do not mail your objection by this date, it will not be considered.

15. <u>What is the difference between objecting and asking to be excluded?</u>

Objecting is simply telling the Court that you do not like something about the settlement. You can object only if you stay in the class action lawsuit and settlement. Excluding yourself is telling the Court that you do not want to be part of the class action lawsuit or settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

16. <u>Will I still receive a payment from the settlement even if I object?</u>

Yes. If you object to the settlement, the Court will consider your objection. If the settlement is approved despite your objection, you will still be given the settlement amount that applies to you.

17. <u>If I exclude myself, can I get a payment from this settlement?</u>

No. If you exclude yourself, you will not receive money under this settlement.

18. <u>When and where will the Court decide if it will approve the settlement?</u>

The Court has scheduled a fairness hearing at **[insert time]** on **[insert date]** at the United States Courthouse, 300 Constitution Avenue NW, Courtroom **[insert courtroom number]**.  At this hearing the Court will consider whether the settlement is fair, reasonable and adequate.  If there are objections, the Court will consider them.  At or after the hearing, the Court will decide whether to approve the settlement.  We do not know how long this decision will take.

19. <u>Do I have to come to the hearing?</u>

No, Class Counsel will answer any questions the Court may have on behalf of class members.  If you want to attend, you are welcome to come at your own expense.  If you send an objection, you do not have to come to court to talk about it.  As long as you file and mail your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend the hearing, but that is not necessary.

20. <u>May I speak at the hearing?</u>

To speak at the hearing, you must send a letter by mail stating your intention to appear and speak at the hearing.  Be sure to include your name, address, telephone number, and your signature.  You must send your letter by mail stating your intent to appear and speak at the hearing postmarked no later than **[30 days from the date the notice is mailed]** to Class Counsel at the address in No. 6 above, and they will inform the Court and Defendant of your intent to appear and speak.

**21. <u>What should I do if my address changes after I receive this notice?</u>**

**Without a current address, you may not receive the settlement payment to which you may be entitled.  Please send a notice of your new address to Class Counsel at the address in No. 6 above.**

22. <u>Who can I contact if I want further information?</u>

If you have questions about the settlement or need help understanding this Notice, you can contact Class Counsel at the numbers set forth above.  <u>DO NOT</u> CALL THE COURT OR THE CLERK OF THE COURT.

**<u>WHAT IF I DO NOTHING IN RESPONSE TO THIS NOTICE?</u>**

You have the right to do nothing.  **If you do nothing, you will be part of the class action lawsuit and settlement, and will receive a payment according to the formula in No. 9 above.  You will give up all claims that could be resolved by this settlement.  Specifically, you will be bound by the release of claims in No. 13 above.**